STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND.
CLERK'S OFFICE

2004 MAR 11 A 8:16 REC-CUM-5/11/2004

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-323

JEFFREY STENZEL and ROBERT GERBER
individually and on behalf of a class of
persons similarly situated
        Plaintiffs,

v.

DELL INC. f/k/a DELL COMPUTER
CORPORATION, DELL CATALOG SALES
LIMITED PARTNERSHIP, DELL MARKETING
LIMITED PARTNERSHIP, QUALXSERV, LLC and
BANCTEC, INC.
        Defendants.

ORDER ON DEFENDANTS'
MOTION TO ENFORCE
ARBITRATION AND
DISMISS PLAINTIFFS'
CLAIMS OR,
ALTERNATIVELY, TO STAY
PROCEEDINGS AND
COMPEL ARBITRATION



DONALD L. GARBRECHT
LAW LIBRARY

MAY 12 2004

Before the court is Defendants' Motion to Enforce Arbitration Agreements and Dismiss Plaintiffs' Claims Or, Alternatively, to Stay Proceedings and Compel Arbitration.

## FACTUAL BACKGROUND

Plaintiffs filed a class-action lawsuit against Defendants alleging that they purchased computer systems and optional service contracts from Defendants and that Defendants improperly collected from them amounts purporting to be sales tax on non-taxable optional service contracts and non-taxable transportation charges. In their three-count complaint, Plaintiffs make claims against all Defendants for overcharging of sales taxes, negligence, and unfair or deceptive acts or practices.

In their prayer for relief, Plaintiffs request that the action be maintained as a class action pursuant to Rule 23 of the Maine Rules of Civil Procedure and that the court appoint Plaintiffs and their counsel to represent the Class. They ask that the

1

court make a declaration that Defendants' actions related to the collection of purported taxes constitute violations of Maine Sales and Use Tax Law and/or breaches of Defendants' duty to accurately calculate and collect sales tax properly due on purchases made by Maine residents. Plaintiffs also request that the court determine that Defendants' actions constitute unfair or deceptive acts or practices declared to be unlawful by 5 M.R.S.A. § 207 and/or the regulations referenced therein. Plaintiffs seek an award of damages, interest on any damages awarded, reasonable attorneys' fees and costs of suit. Additionally, Plaintiffs ask that Defendants be enjoined, preliminarily and permanently, from further charging and collecting from Maine businesses and residents a purported "tax" on the purchase of Optional Service Contracts and on shipping charges. Finally, Plaintiffs request that Plaintiffs and members of the Class be granted such other relief as may be deemed just and proper by this court.

On September 29, 2003, Defendants filed their motion to enforce arbitration agreements and dismiss Plaintiffs' claims, or alternatively, to stay proceedings and compel arbitration.

## DISCUSSION

The first and primary question that the court must decide is whether the parties entered into an arbitration agreement. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83 (2002) (citation and internal quotation omitted). Unless the parties clearly and unmistakably provide otherwise, the final decision on whether the parties intended to submit to arbitration rests with the court. Id. To make a determination of

2

whether such an agreement exists, the court turns to state contract law. First Options v. Kaplan, 514 U.S. 938, 944 (1995). In the present case, the arbitration clause that Defendants seek to enforce is contained in Dell's Terms and Conditions of Sale ("the Agreement"), which includes a clause that states that the Agreement shall be governed by the laws of the state of Texas.

Plaintiffs correctly assert that the Agreement amounts to an adhesion contract. See Black's Law Dictionary 318-19 (7th ed. 1999) (defining adhesion contract as a "standard-form contract prepared by one party, to be signed by the party in a weaker position, usu. [sic] a consumer, who has little choice about the terms"). However, adhesion contracts are not per se unenforceable. In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 574 (Tex. 1999); see also Restatement of the Law (Second) Contracts, § 208, cmt. a (1981). Adhesion contracts are enforceable unless they are unconscionable or unfair. Cf. In re Oakwood Mobile Homes, Inc., 987 S.W.2d at 574. An adhesion contract may be substantively unconscionable, "which refers to the fairness of the arbitration provision itself." In re Halliburton Co., 80 S.W.3d 566, 571 (Tex. 2002), cert. denied, 123 S. Ct. 901 (2003). In addition, an adhesion contract may be procedurally unconscionable, "which refers to the circumstances surrounding the adoption of the arbitration provision." Id.

Under Texas case law, the basic test for unconscionability is "whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." FirstMerit Bank, N.A., 52 S.W. 3d 749, 757 (Tex. 2001); AutoNation USA Corp. v. Leroy, 105

S.W. 3d 190, 198 (Tex. App. 2003); In re Media Arts Group, Inc., 116 S.W. 3d 900, 912 (Tex. App. 2003). In addition, section 2.302 of the Texas Business and Commercial Code provides:

> § 2.302. Unconscionable Contract or Clause
>
> (a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
>
> (b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

Tex. Bus. & Com. Code § 2.302 (2004).

In the present case, Plaintiffs argue that the arbitration clause is procedurally unconscionable because it was not freely negotiated. In addition, Plaintiffs assert that the arbitration agreement is substantively unconscionable because (1) it is contained in an illusory agreement; (2) Dell unilaterally retains the right to litigate its claims against Plaintiffs; (3) the arbitration clause does not adhere to the Better Business Bureau's ("BBB") *Online* Dispute Resolution Standards;[1] and (4) it prohibits class actions. For the following reasons, the court finds none of Plaintiffs' arguments convincing and grants Defendants' Motion to Dismiss and Compel Arbitration.

---

[1] The BBB has developed a recommended set of standards for dispute resolution clauses in contracts between online businesses and their customers. See BBB Online Dispute Resolution Standards (available at http://www.bbbonline.org/reliability/dr.asp).

4

*Is the Agreement Procedurally Unconscionable?*

Plaintiffs argue that the Terms and Conditions document is unconscionable because it was not freely negotiated. (Pls. Mem. in Opp'n at 15-19.) There is substantial case law on point to the contrary. See Hill v. Gateway 2000 Inc., 105 F.3d 1147, 1148-49 (7th Cir. 1997) (holding that where customers were sent a copy of the sale agreement with their computer shipments and failed to return the shipment, the terms of the sale agreement, including the arbitration clause, constituted the parties' contract); O'Quin v. Verizon Wireless, 256 F. Supp.2d 512, 516-17 (M.D. La. 2003) (enforcing arbitration provision in a terms and conditions pamphlet contained in telephone handset box, even though the buyer could not see the provision until after paying for the handset); Brower v. Gateway 2000, Inc., 676 N.Y.S.2d 569, 571-72 (N.Y. App. Div. 1998) (holding that where consumer kept computer for more than the thirty days provided by seller in which to return product, the terms of the agreement included with the computer, including the arbitration provision, constituted a binding contract); Bischoff v. DirecTV, Inc., 180 F. Supp. 2d 1097, 1103-05 (C.D. Cal. 2002) (agreement of sale shipped with first billing statement for satellite television services formed part of the parties' agreement).

In the case at bar, Plaintiffs had at least three opportunities to review the terms of the Agreement, including the arbitration clause, before deciding to accept or reject it: Dell posts the document on its website and customers may view the document before they place an order with Dell; after a customer orders a product or service from Dell, the company sends an invoice or an acknowledgment of the order that includes the document; and Dell includes a copy of the document along

with the computer system and products it ships to the customer. (Pape Aff. ¶ 7, Exs. C, D & E.) The court finds Plaintiffs' argument that the Agreement did not provide Plaintiffs with any remedy if they were not satisfied with the actual terms and conditions of the Agreement unconvincing, especially in light of Dell's Total Satisfaction Return Policy. See Pape Aff. ¶¶ 9-12; see also Agreement, Term 8 at 2.

*Is the Agreement Substantively Unconscionable?*

### a. Illusory Agreement

Plaintiffs assert that Dell's unfettered right to alter the Agreement's existence or scope renders the arbitration clause within the Agreement illusory.[2] See Pls.' Mem. in Opp'n at 8-10; see also Restatement of the Law (Second) Contracts § 77 ("A promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances . . . ). The court disagrees and finds that the clause to which Plaintiffs refer merely provides notice to its on-line customers that future purchases in different transactions may be covered by different terms and conditions.

Texas law has long recognized that contracts must be construed as a whole and should be interpreted to avoid illusory promises. See Portland Gasoline Co. v. Superior Mktg. Co., 243 S.W.2d 823, 825 (Tex. 1951), overruled on other grounds N. Gas Co. v. Conoco, Inc., 986 S.W.2d 603 (Tex. 1998); see also Westwind Exploration, Inc. v. Homestate Savs. Ass'n, 696 S.W.2d 378, 382 (Tex. 1985) (citing and following Portland Gasoline Co.). Texas law is consistent with black-letter contract law. See Restatement (Second) Contracts § 203(a) (stating that "an interpretation which

---

[2] The Agreement contains the following clause: "These terms and conditions are subject to change without prior written notice at any time, in Dell's sole discretion." Agreement at 1.

gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.")

Reading the Agreement in its entirety, the court finds that Dell intended to be bound by the terms and conditions in the Agreement. This interpretation is supported by other clauses in the Agreement, which evidence Dell's intention:

> THESE TERMS AND CONDITIONS APPLY (1) UNLESS THE CUSTOMER HAS SIGNED A SEPARTATE PURCHASE AGREEMENT WITH DELL, IN WHICH CASE THE SEPARATE AGREEMENT SHALL GOVERN; OR (II) UNLESS OTHER DELL STANDARD TERMS APPLY TO THE TRANSACTION.

(Pape Aff., Ex. E at 1.)

> Other than as specifically provided in any separate formal purchase agreement between Customer and Dell, these terms and conditions may NOT be altered, supplemented, or amended by the use of any other document(s). Any attempt to alter, supplement or amend this document or to enter an order for product(s) which is subject to additional or altered terms and conditions will be null and void, unless otherwise agreed to in a written agreement signed by both Customer and Dell.

(Pape Aff., Ex. E at 1.)

In addition, the court's conclusion that the Agreement is not illusory can be reconciled with the employment law cases cited by Plaintiffs, where unilateral modification clauses appeared in employee handbooks and employment contracts rather than in an on-line purchase agreement.[3] Given the nature of internet commerce, it is entirely possible that a potential Dell customer may visit Dell's website, read the Agreement, and then purchase a product several weeks later.

---

[3] See e.g. Dumais v. Am. Golf Corp. 299 F.3d 1216 (10th Cir. 2002) (invalidating arbitration agreement in an employment contract where construction of agreement allowed employer to freely modify the agreement); Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306, 315-16 (6th Cir. 2000) (where the employer retained the unlimited right to modify the terms of the arbitration agreement there was no mutuality of obligation and, hence, no consideration, and therefore, no enforceable arbitration agreement), cert. denied, 531 U.S. 1072 (2001); In re

Similarly, it is foreseeable that some of Dell's customers will make multiple purchases from Dell. In such cases, the customers are put on notice that the terms and conditions in place one day may be different than those that they may agree to if and when they purchase products from Dell in the future. In contrast, in the employment law context, it would be nonsensical to read a unilateral modification clause as not pertaining to the contract in which it is contained.

### b. Dell's Unilateral Retention of the Right to Litigate

Plaintiffs argue that the fact that Dell has designed a procedure that compels its customers to pursue any and all claims against Dell in an arbitration forum, while reserving for itself the right to litigate any claims or disputes that it may have against purchasers, makes the arbitration clause unconscionable. The Texas Supreme Court has recently held that forcing one party to arbitrate its claims, while permitting the other party to litigate does not render an agreement unconscionable. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 757 (Tex. 2001). In addition, many federal courts have held that the type of provision involved in this case is not unconscionable so long as it is supported by adequate consideration. See, e.g., Harris v. Green Tree Fin. Corp., 183 F.3d 173, 183 (3d Cir. 1999); Doctor's Assoc., Inc. v. Distajo, 66 F.3d 438, 451-53 (2d Cir. 1995); Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp., 878 F.2d 167, 168-69 (6th Cir. 1989); Sparks v. Stone Street Capital, Inc., No. 3:02-CV-0724-R , 2002 U.S. Dist. LEXIS 11808, at *15 (N.D. Tex. July 1, 2002) (following In re FirstMerit Bank, N.A., 52 S.W.3d at 757); Young v. Jim Walter Homes, Inc., 110 F. Supp. 2d 1344, 1350 (M.D. Ala. 2000); Pridgen v. Green Tree Fin. Servicing Corp., 88 F. Supp. 2d 655, 658-59 (S.D. Miss.

---

C&H News Co., 2003 Tex. App. LEXIS 393, at *11 (Tex. App. 13th Dist. Jan. 16, 2003) (invalidating arbitration agreement where employer retained the right to modify its terms).

2000); Gray v. Conseco, Inc., 2000 U.S. Dist. LEXIS 14821, *13-16 (C.D. Cal. Sept. 29, 2000).

### c. Deviation from BBBOnline Dispute Resolution Standards

Next, Plaintiffs argue that the agreement is unconscionable based on Dell's deviation from the BBB*Online* Dispute Resolution Standards. They assert that Dell is required to adhere to these standards because it posts the BBB*Online* Reliability Seal on its website. In addition, they claim that Defendant's noncompliance with the BBB standards "appear[s] unconscionable according to the mores and business practices of the time and place." See Pls.' Mem. in Opp'n at 16 (quoting 1 Corbin, Contracts § 128, at 551 (1963)). The court finds these arguments unavailing. The BBB*Online* Dispute Resolution Standards offer guidelines for on-line businesses to aspire to and are not legally binding. Accord Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 27-28 (1991) (requiring arbitration of ADEA claims despite the Better Business Bureau's disapproval of arbitration in cases involving statutory claims).

### d. Prohibition of Class Actions

Finally, Plaintiffs claim that the arbitration agreement is substantively unconscionable because it prohibits class treatment of small-damage consumer claims.[4] They allege that the prohibition on class treatment rises to the level of fundamental unfairness because the prohibitively large costs of arbitration may preclude individual members of the Class from pursuing their statutory rights in an arbitration forum.

---

[4] The arbitration clause contains the following sentence: "The arbitration will be limited solely to the dispute or controversy between Customer and Dell." (Pape Aff., Ex. E at 4). As this clause is not ambiguous, the court gives it its plain meaning. See Lopez v. Munoz, Hockema & Reed, 22 S.W.3d 857, 861 (Tex. 2000).

Under Texas law, "there is no entitlement to proceed as a class action," however, the Texas Supreme Court has conceded, "there may be circumstances in which a prohibition on class treatment may rise to the level of fundamental unfairness." AutoNation, 105 S.W. 3d at 199-200 (citations omitted). Similarly, the United States Supreme Court has recognized that while large arbitration costs could preclude a litigant from vindicating her federal statutory rights, "an arbitration agreement's mere silence with respect to costs and fees, by itself, is a "plainly insufficient" basis for invalidating an agreement. Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90 (2000). Rather, the party opposing arbitration must prove the likelihood of incurring such costs. Id.

While the Supreme Court did not specify in Green Tree how detailed the showing of prohibitive expense must be, Texas courts require some specific information of future costs. In re Firstmerit Bank, N.A., 52 S.W.3d at 756. In both Green Tree and Firstmerit, the parties resisting arbitration failed to provide the court with sufficiently detailed information on the allegedly prohibitive costs of arbitration for the courts to defeat the arbitration agreements. In Green Tree, the party seeking to defeat an arbitration agreement cited what she claimed were American Arbitration Association ("AAA") figures on arbitration costs. However, she provided no evidence that AAA would actually conduct the arbitration or charge her the fees she identified. Accordingly, the Supreme Court determined that there was insufficient evidence to invalidate the arbitration agreement. Green Tree, 121 S. Ct. at 522 & n.6. Similarly, in Firstmerit, in an effort to show that arbitration was likely to be excessively expensive, the plaintiffs asserted they would

10

be subject to a list of AAA fees without establishing that AAA would actually conduct the arbitration or charge the specified fees. Firstmerit, 52 S.W.3d at 757.

In the case at bar, Plaintiffs have offered a detailed showing of the costs that individual members of the prospective Class will almost definitely incur should they seek to arbitrate their respective claims. The parties' arbitration agreements expressly provide that disputes are to be resolved by the National Arbitration Forum ("NAF"). See Pape Aff., Ex. E at 4. Thus, to pursue an individual claim in arbitration for a claim of $2,500 or less, each plaintiff would each be obliged to pay a $25.00 arbitration filing fee, as well as a $75.00 fee if a participatory hearing was conducted. See Pape Aff. Ex. F at 18, 31 & 38.[5] In addition, each of the individual plaintiffs would be required to pay an additional $100 for the arbitrator's written findings if requested. See Pape Aff. Ex. F at 41. Given these facts, the Plaintiffs correctly assert that in a large class, where each member of the class would be required to pay the $25.00 fee in order to arbitrate his or her claims against Defendants, the collective fees of arbitration would likely be excessive in comparison to the filing fee in court for a class action.

However, in proceeding with their analysis, Plaintiffs have failed to employ a basic principle of contract law, namely: in order for the arbitration clause's prohibition of class action proceedings to be found unconscionable, it must have been unconscionable when the parties formed the contract. See In re Firstmerit, 52 S.W.3d at 757 (holding that "the basic test for unconscionability is whether . . . the clause involved is so one-sided that it is unconscionable under the circumstances when the parties made the contract"); see also Tex. Bus. & Com. Code § 2.302

(stating that the court's review should be focused on whether the contract and its provisions were unconscionable at the time of contract formation). Hence, in the present case, the test is not whether the prohibition of class actions is unconscionable in light of a pending class action suit. Rather, the test is whether the prohibition was unconscionable at the time that the parties entered into their respective agreements.

Applying that standard, the court finds that the arbitration clause was not substantively unconscionable at the time of contract formation. Given the potential advantages and disadvantages of arbitration across a wide spectrum of possible disputes, the prohibition clause was reasonable when the parties entered into the Agreement.

## DECISION

Based upon the foregoing, and pursuant to M. R. Civ. P. 79(a), the Clerk is directed to enter this Order on the Civil Docket by a notation incorporating it by reference and the entry is:

Defendants' Motion to Enforce Arbitration Agreements and Dismiss Plaintiffs' Claims is GRANTED.

Dated at Portland, Maine this 10th day of March 2004.

_____
Robert E. Crowley
Justice, Superior Court

---

[5] Defendants assert that Plaintiffs may be eligible for filing fee waivers. However, waivers are only made available to individuals who are indigent under federal poverty standards. See Pape Aff. Ex. F at 32; see also Thaler Aff. at Addendum 9.

JEFFREY STENZEL  - PLAINTIFF

Attorney for: JEFFREY STENZEL
JEFFREY THALER
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

Attorney for: JEFFREY STENZEL
VISITING ATTORNEY
VISITING ATTORNEY
-

-  -


ROBERT GERBER  - PLAINTIFF

Attorney for: ROBERT GERBER
JEFFREY THALER
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

Attorney for: ROBERT GERBER
VISITING ATTORNEY
VISITING ATTORNEY
-

-  -




VS
DELL INC., F/K/A DELL COMPUTER CORPORATION - DEFENDANT

Attorney for: DELL INC., F/K/A DELL COMPUTER
CORPORATIONHITE
PIERCE ATWOOD
ONE MONUMENT SQUARE
PORTLAND ME 04101

DELL CATALOG SALES LIMITED PARTNERSHIP - DEFENDANT

Attorney for: DELL CATALOG SALES LIMITED
PARTNERSHIPHITE
PIERCE ATWOOD
ONE MONUMENT SQUARE
PORTLAND ME 04101

DELL MARKETING LIMITED PARTNERSHIP - DEFENDANT

Attorney for: DELL MARKETING LIMITED PARTNERSHIP
JEFFREY M WHITE
PIERCE ATWOOD
ONE MONUMENT SQUARE
PORTLAND ME 04101

SUPERIOR COURT
CUMBERLAND, ss.
Docket No   PORSC-CV-2003-00323

**DOCKET RECORD**

Printed on: 03/12/2004

QUALXSERV, LLC - DEFENDANT

Attorney for: QUALXSERV, LLC
JEFFREY M WHITE
PIERCE ATWOOD
ONE MONUMENT SQUARE
PORTLAND ME 04101


BANCTEC, INC. - DEFENDANT

Attorney for: BANCTEC, INC.
JEFFREY M WHITE
PIERCE ATWOOD
ONE MONUMENT SQUARE
PORTLAND ME 04101


Filing Document: COMPLAINT                          Minor Case Type: OTHER NEGLIGENCE
Filing Date: 06/17/2003

## Docket Events:
06/17/2003 FILING DOCUMENT - COMPLAINT FILED ON 06/17/2003
          CLASS ACTION AND DEMAND FOR JURY TRIAL (NO JURY FEE PAID).

06/17/2003 Party(s):  JEFFREY STENZEL
          ATTORNEY - RETAINED ENTERED ON 06/17/2003
          Plaintiff's Attorney: JEFFREY THALER

          Party(s):  ROBERT GERBER
          ATTORNEY - RETAINED ENTERED ON 06/17/2003
          Plaintiff's Attorney: JEFFREY THALER

06/19/2003 Party(s):  JEFFREY STENZEL,ROBERT GERBER
          NOTE - OTHER CASE NOTE ENTERED ON 06/19/2003
          PLAINTIFF'S NEW SUMMARY SHEET .

06/25/2003 Party(s):  JEFFREY STENZEL,ROBERT GERBER
          MOTION - MOTION TO ADMIT VISIT. ATTY FILED ON 06/25/2003
          WITH VERIFIED APPLICATION OF FREERIC L. ELLIS, EDWARD D. RAPACKI AND JOSEPH M. MAKALUSKY
          TO APPEAR PRO HAC VICE
                                              6-26-03 PROPOSED ORDER

07/01/2003 Party(s):  JEFFREY STENZEL,ROBERT GERBER
          MOTION - MOTION TO ADMIT VISIT. ATTY GRANTED ON 06/30/2003
          THOMAS E HUMPHREY , JUSTICE
          IT IS ORDERED THAT FREDRIC L. ELLIS, EDWARD D. RAPACKI AND JOSEPH M. MAKALUSKY ESQS. BE
          ADMITTED PRO HAC VICE PURSUANT TO RULE 89(B) OF THE MAINE RULES OF CIVIL PROCEDURE. 7-1-03
          COPY MAILED TO JEFFREY THALER ESQ.

07/01/2003 Party(s):  JEFFREY STENZEL
          ATTORNEY - RETAINED ENTERED ON 06/30/2003
          Plaintiff's Attorney: VISITING ATTORNEY

          Party(s):  ROBERT GERBER