In re FIRSTMERIT BANK, N.A. f/k/a Signal Bank, N.A. and Mobile Consultants, Inc., Relators.

No. 00–0548.

Supreme Court of Texas.

Argued Feb. 14, 2001.

Decided June 14, 2001.

John A. Seib, Jr., The Seib Law Firm, Dallas, Michael Deitch, Law Offices of Michael Deitch, Austin, Steven Marc Reback, Law Offices of Michael Deitch, Austin, for Relator.

F. Terry Callahan, Law Offices of F. Terry Callahan, San Antonio, for Respondent.

Justice ENOCH delivered the opinion of the Court.

FirstMerit Bank and Mobile Consultants seek mandamus relief after the trial court denied their motion to compel arbitration. Because the Federal Arbitration Act (FAA) requires the trial court to compel arbitration in this case, we conditionally grant their petition and order the trial court to compel arbitration in accordance with the parties' agreement.

## I. BACKGROUND

Pete and Janie de los Santos purchased a mobile home for their daughter, Sarah, and her husband, Gary Alvarez. They bought the home from Verde Homes under Verde's retail installment financing agreement. Verde assigned this contract, which Pete and Janie signed, to Signal Bank (now FirstMerit Bank). The agreement contained an Arbitration Addendum, which required binding arbitration for "all disputes, claims, or other matters in question arising out of or relating to this Loan, its interpretation, validity, performance or the breach thereof." The word "Loan" referred to "all manufactured home loan documents, including but not limited to the retail installment contract. . . ." The Addendum further stated that "the scope of arbitrability is broad and includes, without limitation, contractual, tort, statutory, and caselaw claims." The Addendum also permitted the bank to seek judicial relief to enforce its security interest, recover the buyers' monetary loan obligation, and fore-

close. But aside from these three exceptions, the Addendum required arbitration for all other disputes relating to the installment contract.

After Verde delivered the home, the de los Santoses tried to revoke their acceptance, claiming that the home was defective and that Verde failed to perform certain promised repairs. Although Verde Homes refused to rescind the sale, the de los Santoses apparently stopped making their monthly loan payments. In response, Signal Bank took possession of the home. The de los Santoses then sued Signal Bank, Mobile Consultants (Signal's servicing agent), Verde Homes, and two Verde employees, alleging breach of contract, revocation of acceptance, breach of warranty, negligence, and fraud. They also alleged violations of the Deceptive Trade Practices Act, Fair Debt Collection Practices Act, Equal Credit Opportunity Act, and Fair Credit Reporting Act. Additionally, the de los Santoses claimed that their successful revocation of acceptance entitled them to a security interest in the home, equal to the amount they had paid on the installment contract. To enforce their security interest, they requested an injunction forcing FirstMerit to return possession of the home until it refunded the de los Santoses' loan payments.

In response, FirstMerit and Mobile moved to compel arbitration.[1] The trial court denied their motion. FirstMerit Bank and Mobile then petitioned the Third Court of Appeals for a writ of mandamus, which the court denied. FirstMerit and Mobile now ask this Court for mandamus relief.

## II. WHETHER TO ORDER ARBITRATION

Mandamus is an extraordinary remedy available only in limited circumstances.[2] A court should issue mandamus only to correct a clear abuse of discretion or the violation of a legal duty when there is no other adequate remedy at law.[3] When a trial court erroneously denies a party's motion to compel arbitration under the FAA, the movant has no adequate remedy at law and is entitled to a writ of mandamus.[4] Thus, we must determine whether the movants established their right to arbitration.

A party seeking to compel arbitration by mandamus must first establish the existence of an arbitration agreement subject to the FAA.[5] Once the movant establishes an agreement, the court must then determine whether the arbitration agreement covers the nonmovant's claims.[6] Because state and federal policies continue to favor arbitration,[7] a presumption exists favoring agreements to arbitrate under the FAA,[8] and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration.[9] Once the trial court

---

1. The other parties did not answer the suit, and a default judgment was entered against them.

2. *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex.1999).

3. *Id.*

4. *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 88 (Tex.1996).

5. *In re Oakwood Mobile Homes*, 987 S.W.2d 571, 573 (Tex.1999).

6. *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996).

7. *Id.; Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000).

8. *Cantella*, 924 S.W.2d at 944.

9. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995).

concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses,[10] the trial court has no discretion but to compel arbitration and stay its own proceedings.[11]

## A. SCOPE OF ARBITRATION

■ Here, there is no dispute about the Arbitration Addendum's existence. The de los Santoses instead contend that the installment contract was completed entirely in Texas, did not involve interstate commerce, and, accordingly, was not subject to the FAA. As defined in the FAA, however, "interstate commerce" is not limited to the interstate shipment of goods, but includes all contracts "relating to" interstate commerce.[12] In fact, the United States Supreme Court has construed the FAA to extend as far as the Commerce Clause of the United States Constitution will reach.[13] In this case, the evidence demonstrates that the loan was made in interstate commerce. Signal Bank and Mobile Consultants were Ohio corporations, while the de los Santoses were Texas residents. The installment contract stated that Signal Bank was located in Ohio. The record includes several photocopies of loan payment checks drawn on a Texas bank that Signal Bank had deposited in Ohio. And both Signal and Mobile Consultants corresponded with the de los Santoses from Ohio. The de los Santoses also listed Signal's Ohio address at the top of their revocation of acceptance letter. Moreover, the Arbitra-

tion Addendum, which Pete and Janie de los Santos both signed, states that the loan "involves interstate commerce ... and shall be governed by the Federal Arbitration Act...." In light of these facts, we conclude that the installment contract relates to interstate commerce and is subject to the FAA.[14]

■ Because FirstMerit and Mobile have established the existence of an agreement to arbitrate under the FAA, we must next determine whether the Arbitration Addendum covers the de los Santoses' claims. To determine whether a party's claims fall within an arbitration agreement's scope, we focus on the complaint's factual allegations rather than the legal causes of action asserted.[15] And again, we resolve any doubts about the Arbitration Addendum's factual scope in favor of coverage. Further, we reiterate that the parties' Arbitration Addendum covers "all disputes, claims, or other matters in question arising out of or relating to this Loan, its interpretation, validity, performance, or the breach thereof" and states that "the scope of arbitrability is broad and includes, without limitation, contractual, tort, statutory, and case law claims."

We now turn to the de los Santoses' factual allegations. The de los Santoses asserted that the sellers misrepresented that they owned the homesite, and that the homesite included a driveway and septic system. They also claimed that the sellers were not properly licensed, misrepresen-

---

10. *See In re Oakwood*, 987 S.W.2d at 573.

11. *Cantella*, 924 S.W.2d at 944.

12. *See Lost Creek Mun. Util. Dist. v. Travis Indus. Painters, Inc.*, 827 S.W.2d 103, 105 (Tex.App.—Austin 1992, writ denied).

13. *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272–74, 276–78, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

14. *See, e.g., Mesa Operating Ltd. P'ship v. Louisiana Intrastate Gas Corp.*, 797 F.2d 238, 243 (5th Cir.1986); *Snyder v. Smith*, 736 F.2d 409, 418 (7th Cir.1984), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984).

15. *Prudential Sec.*, 909 S.W.2d at 900.

ted the terms of the loan, failed to provide a credit report to Sarah and Gary Alvarez, and failed to make other disclosures regarding interest rates and credit. The de los Santoses further alleged that the sellers fraudulently double-charged them for insurance that was already paid for in the installment contract. In addition, the de los Santoses asserted that after taking possession of the home, they learned that the home was not yet complete, that it lacked carpeting and air conditioning, and that it was not installed properly. They also charged that the sellers failed to repair these defects in a timely and workmanlike manner, that they never installed an air conditioner, and that the sellers' attempts to repair the septic tank were untimely and defective. Finally, the de los Santoses asserted that the bank wrongfully denied their attempt to revoke the contract, criminally trespassed on their property, and wrongfully repossessed the home.

In light of the Addendum's broad language, all of the de los Santoses' factual allegations fall within the Addendum's scope. The de los Santoses contend that because the Addendum "relat(es) to the Loan," it only covers claims that relate directly to the home's financing, and does not cover their allegations about the home's post-sale condition and repairs. But this interpretation ignores the Addendum's broad definition of "Loan" to include the installment contract and all other loan documents. Further, irrespective of the Addendum's broad language, we also note that the home was the bank's collateral under the Loan. The de los Santoses al-

leged that the sellers' failure to remedy the home's physical problems entitled them to a security interest in the home, which would prevent the bank from repossessing its collateral.[16] Thus, the home's post-sale condition, and the sellers' post-sale failure to remedy the home's problems, relate to the bank's right to repossess its collateral under the loan. In sum, all of the de los Santoses' factual allegations arise out of or relate to either the sellers' conduct in selling the home and negotiating the installment contract, or to the performance or alleged breach of the installment contract. Furthermore, while fraud in the inducement of an arbitration agreement is a defense to arbitration, whether the sellers made any misrepresentations in the inducement of the underlying contract relates to the contract's validity and can be arbitrated.[17] As for the de los Santoses' wrongful repossession allegations, the Addendum provides that "any counterclaims in suits brought by Seller/Assignee pursuant to this provision," including complaints about foreclosure, may be arbitrated. Given the Addendum's language on counterclaims, the Arbitration Addendum covers all of the de los Santoses' complaints about the bank's right to repossess the home.

As a specific challenge, Sarah and Gary Alvarez contend that their claims are exempt from the Arbitration Addendum because they did not sign the contract. But a litigant who sues based on a contract subjects him or herself to the contract's terms.[18] Here, the Alvarezes fully joined the de los Santoses' contract claims. In fact, the de los Santoses' original petition

16. See Tex. Bus. & Com.Code § 2.608(a), 2.711(c).

17. See Pepe Int'l Dev. Co. v. Pub Brewing Co., 915 S.W.2d 925, 930 (Tex.App.—Houston [1st Dist.] 1996, no writ); New Process Steel Corp.

v. Titan Indus. Corp., 555 F.Supp. 1018, 1022 (S.D.Tex.1983).

18. See Nationwide of Bryan, Inc. v. Dyer, 969 S.W.2d 518, 520 (Tex.App.—Austin 1998, no pet.).

makes no distinction between the parents' claims and the Alvarezes' claims. Thus, by suing FirstMerit based on the de los Santoses' installment contract, the Alvarezes subjected themselves to the contract's terms, including the Arbitration Addendum.

Accordingly, unless the de los Santoses can prove one of their defenses to the Arbitration Addendum, the FAA requires arbitration.[19]

## B. DEFENSES TO ARBITRATION

The de los Santoses assert the defenses of unconscionability, duress, fraudulent inducement, and revocation. We again note that these defenses must specifically relate to the Arbitration Addendum itself, not the contract as a whole, if they are to defeat arbitration.[20] Defenses that pertain to the entire installment contract can be arbitrated.[21] We further note that the de los Santoses' defenses against the Addendum are governed by Texas law.[22] Again, since the law favors arbitration, the burden of proving a defense to arbitration is on the party opposing arbitration.[23]

The de los Santoses contend that the Arbitration Addendum is unconscionable because arbitration might subject them to substantial costs and fees. On this issue, in *Green Tree Financial Corp. v. Randolph*, the United States Supreme Court recognized that "the existence of large arbitration costs could preclude a litigant ... from vindicating her federal statutory rights...."[24] Nonetheless, the Supreme Court concluded that an arbitration agreement's mere silence with respect to costs and fees, by itself, is a "plainly insufficient" basis for invalidating the agreement.[25] Instead, the party opposing arbitration must prove the likelihood of incurring such costs.[26] To hold otherwise would "undermine the liberal federal policy favoring arbitration agreements."[27]

While the Supreme Court did not specify "how detailed the showing of prohibitive expense must be," there is no doubt that *some* specific information of future costs is required.[28] In *Green Tree*, the party resisting arbitration cited what she claimed were American Arbitration Association (AAA) figures on arbitration costs, but she provided no evidence that the AAA would actually conduct the arbitration or charge her the fees she identified.[29] Because of this uncertainty, the Supreme Court deemed the evidence insufficient to defeat arbitration.[30]

Here, the de los Santoses testified, in two sworn affidavits, that the AAA charged a minimum $2,000 filing fee and a $250/day/party hearing fee, along with several other unspecified fees, for hearings before a three-member panel. But we

---

19. *See In re Oakwood,* 987 S.W.2d at 573.

20. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

21. *See id.*

22. *In re Oakwood,* 987 S.W.2d at 574.

23. *Id.* at 573.

24. 531 U.S. 79, 91, 121 S.Ct. at 522, 148 L.Ed.2d 373.

25. *Id.*

26. *Id.*

27. *Id.*

28. *Id.* at 522–23.

29. *Id.* at 522 & n. 6.

30. *See id.*

need not decide whether these costs would be excessive. As in *Green Tree*, the de los Santoses provided no evidence that the AAA would actually conduct the arbitration or charge the specified fees. The Arbitration Addendum does not state that the AAA will conduct the arbitration, and it makes no mention of arbitration costs. We also note that the most recent AAA commercial arbitration rules provide that "the AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees." [31] Moreover, in the event the de los Santoses do not avail themselves of FirstMerit Bank's choice of arbitrators, the FAA permits the trial court to choose an alternate set of arbitrators.[32] The de los Santoses also complain that the requirement of three arbitrators is inherently costly. But again, without any specific information on what the costs will be, this requirement is not evidence of unconscionability. Finally, in agreeing to the Addendum, Pete and Janie de los Santos agreed "that arbitration is a less expensive method of dispute resolution that decreases servicing costs of this loan...." Because the record contains no specific evidence that the de los Santoses will actually be charged excessive arbitration fees, we conclude that there is legally insufficient evidence that the plaintiffs would be denied access to arbitration based on excessive costs.

The de los Santoses also argue that the agreement's terms are unconscionable because they force the weaker party to arbitrate their claims, while permitting the stronger party to litigate their claims.[33] They point us to decisions in other jurisdictions that have found this type of clause to be unconscionable.[34] Most federal courts, however, have rejected similar challenges on the grounds that an arbitration clause does not require mutuality of obligation, so long as the underlying contract is supported by adequate consideration.[35] In any event, the basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.[36] The principle is one of preventing oppression and unfair surprise and not of disturbing allocation of risks because of superior bargaining power.[37] Here, the Arbitration Addendum allows the bank to seek judicial relief to enforce its security agreement, recover the buyers' monetary loan obligation, and foreclose. Given the weight of federal precedent and the routine nature of mobile

**31.** American Arbitration Association, Arbitration Rules for the Real Estate Industry, Rule 51.

**32.** *See* 9 U.S.C. § 5.

**33.** *See In re Conseco Fin. Servicing Corp.*, 19 S.W.3d 562, 569 n. 3 (Tex.App.—Waco 2000, pet. dism'd by agr.).

**34.** *See, e.g., Armendariz v. Foundation Health Psychcare Servs.*, 24 Cal.4th 83, 99 Cal. Rptr.2d 745, 6 P.3d 669, 691–94 (Cal.2000); *Iwen v. U.S. West Direct*, 293 Mont. 512, 977 P.2d 989, 995–96 (1999).

**35.** *See, e.g., Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183 (3d Cir.1999); *Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438, 451–53 (2d Cir.1995); *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 168–69 (6th Cir.1989); *Young v. Jim Walter Homes, Inc.*, 110 F.Supp.2d 1344, 1350 (M.D.Ala.2000); *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F.Supp.2d 655, 658–59 (S.D.Miss.2000); *Gray v. Conseco, Inc.*, 2000 WL 1480273, 2000 U.S. Dist. LEXIS 14821, 13–16 (C.D.Cal. Sept. 29, 2000).

**36.** Tex. Bus. & Com.Code § 2.302 cmt. 1.

**37.** *Id.*

home financing agreements,[38] we find that the Arbitration Addendum in this case, by excepting claims essentially protecting the bank's security interest, is not unconscionable.[39] We also recognize that the plaintiffs are free to pursue their unconscionability defense in the arbitral forum.

Moreover, the de los Santoses cannot prevail on their duress defense, since there is no evidence that the sellers threatened to do anything they did not have a legal right to do.[40] At most, the sellers stated only that they would not sell the home if the de los Santoses would not sign the Addendum, which is not evidence of duress.[41]

The de los Santoses also alleged fraud in the inducement of the Arbitration Addendum. The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.[42] In this case, the de los Santoses alleged that the sellers fraudulently represented that they owned the land under the home, and that the home had a septic system and driveway. They also allege that the sellers' advertisements and pre-sale statements made no reference to an arbitration clause, and that the sellers did not adequately explain the consequences of signing the Addendum. However, there is no evidence that the sellers actually misrepresented the Addendum's terms, or that they made any false material representations with regard to the Arbitration Addendum itself. Accordingly, we decline to invalidate the Arbitration Addendum based on fraud.

Finally, the de los Santoses argue that their alleged revocation of the installment contract also applies to the Arbitration Addendum, rendering it unenforceable. But this claim really pertains to the entire installment contract and not just the Arbitration Addendum. Again, the Arbitration Addendum's validity is a separate issue from the validity of the whole contract.[43] And given that the FAA's primary objective is to encourage the arbitration of contract-related issues, the issue of whether the underlying contract was revoked is an issue that should be arbitrated, since it "arises from or relates to" the contract.[44]

## III. CONCLUSION

Because the claims in this lawsuit are within the scope of the parties' agreement to arbitrate, we conditionally grant the writ of mandamus and direct the trial court to order that all claims proceed to arbitration. The clerk is instructed to is-

**38.** *See Palm Harbor Homes, Inc. v. McCoy,* 944 S.W.2d 716, 723 n. 8 (Tex.App.—Fort Worth 1997, orig. proceeding).

**39.** *See Pridgen,* 88 F.Supp.2d at 658–59; see *also Conseco Fin. Servicing Corp. v. Wilder,* 47 S.W.3d 335 (Ky.App.2001).

**40.** *In re Oakwood,* 987 S.W.2d at 574.

**41.** *See id.*

**42.** *Formosa Plastics Corp. v. Presidio Engrs. & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998).

**43.** *See Miller v. Puritan Fashions Corp.,* 516 S.W.2d 234, 238–39 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.).

**44.** *See Mewbourne Oil Co. v. Blackburn,* 793 S.W.2d 735, 737 (Tex.App.—Amarillo 1990, orig. proceeding).

sue the writ only if the trial court fails to do so.