ACCEPTED
13-15-00469-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
12/23/2015 5:17:02 PM
Dorian E. Ramirez
CLERK

# No. 13-15-00469-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
12/28/2015 8:00:00 AM
DORIAN E. RAMIREZ
Clerk

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS

## John C. Dempsey a/k/a Jack Dempsey and Gold Consultants, *appellants*

## v.

## U.S. Money Reserve, Inc. d/b/a United States Rare Coin & Bullion Reserve, *appellee*

On Appeal from the 58th Judicial District Court
Jefferson County, Texas

Tr. Ct. No. A-180,741

# APPELLANT'S BRIEF

Timothy A. Hootman, SBN 09965450
2402 Pease St
Houston, TX 77003
713.247.9548; 713.583.9523 (f)
Email: thootman2000@yahoo.com

ATTORNEY FOR APPELLANT, JOHN C.
DEMPSEY A/K/A JACK DEMPSEY

ORAL ARGUMENT REQUESTED

1

# LIST OF PARTIES AND COUNSEL

The following persons and entities are parties or counsel in this case:

---

| | |
|---|---|
| **Appellants:** | John C. Dempsey a/k/a Jack Dempsey |
| **Counsel for appellants in the trial court:** | Gary E. Patterson, SBN 15590830<br>1010 Lamar St, Ste 860<br>Houston, TX 77002<br>713.223.3095<br>713.223.2121 (f)<br>Email: gpatterson@gpattersonlaw.com |
| **Counsel for appellants on appeal:** | Timothy A. Hootman, SBN 09965450<br>2402 Pease St<br>Houston, TX 77003<br>713.247.9548<br>713.583.9523 (f)<br>Email: thootman2000@yahoo.com |
| **Appellee:** | U.S. Money Reserve, Inc. d/b/a United States Rare Coin & Bullion Reserve |
| **Counsel for appellee in the trial court and on appeal** | John Werner, SBN 00789720<br>REAUD, MORGAN & QUINN, L.L.P.<br>P.O. Box 26005<br>Beaumont, TX 77720-6005<br>409.838.1000<br>409.833.8236 (f) |

# TABLE OF CONTENTS

LIST OF PARTIES AND COUNSEL ................................................................ 2

TABLE OF CONTENTS ............................................................................ 3

INDEX OF AUTHORITIES ......................................................................... 4

STATEMENT OF CASE ............................................................................ 5

ISSUE PRESENTED ................................................................................ 6

STATEMENT OF FACTS ........................................................................... 7

SUMMARY OF ARGUMENT ...................................................................... 16

ARGUMENT AND AUTHORITIES ................................................................ 17

PRAYER ............................................................................................. 21

CERTIFICATE OF WORD COUNT .............................................................. 22

CERTIFICATE OF SERVICE ..................................................................... 23

APPENDIX ................................................................... Final Judgment

# INDEX OF AUTHORITIES

*Cases:*

*M Forest Oil Corp. v. McAllen*, 268 S.W.3d 51 (Tex. 2008) ........................17

*In re Dillard Dep't Stores, Inc.* 198 S.W.3d 778 (Tex. 2006) (orig. proceeding)............................................................................ 18

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749 (Tex. 2001) (orig. proceeding) ................................................................................ 18

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003) (orig. proceeding).................................................................. 17, 18

*Nationwide of Fort Worth, Inc. v. Wigington*, 945 S.W.2d 883 (Tex. App.—Waco 1997, writ dism'd w.o.j. ) ................................ 17, 19

*Perry Homes v. Cull*, 258 S.W.3d 580 (Tex. 2008) ................................... 18

*Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573 (Tex. 2014) (per curiam)................................................ 18

*Statutes:*

9 U.S.C. § 1 ) ...............................................................................17

TEX. CIV. PRAC. & REM. CODE § 171.001 .........................................17

# STATEMENT OF THE CASE

Appellee, U.S. Money Reserve, Inc. d/b/a United States Rare Coin & Bullion Reserve, sued John C. Dempsey a/k/a Jack Dempsey for an injunction and money judgment based on a non-compete agreement signed in 2007 (CR 18-26). Appellant filed motion to stay arbitration (CR 144-169), which the trial court denied (Sup RR vol. 2, page 9). After an arbitration award was entered in favor of appellee, appellant objected to the trial court's confirmation of the award (CR 217-220). The trial court overruled appellant's objection and entered a final judgment confirming the award on behalf of USMR against Dempsey in the amount of $1,650,000.00 (CR 222-223)

This appeal follows.

# ISSUE PRESENTED

Did the trial court err in denying Dempsey's motion to stay arbitration, in denying his motion to set the case for a jury trial, in refusing to consider his no-evidence motion for summary judgment, and in overruling his objection to confirmation of the arbitration award?

# STATEMENT OF FACTS

The following are parties to the three agreements that are referred to in this statement of facts:

- Appellant, John C. Dempsey a/k/a Jack Dempsey ("Dempsey").
- Appellee, U.S. Money Reserve, Inc. d/b/a United States Rare Coin & Bullion Reserve ("USMR").
- United States Gold Coin Exchange, LP ("USGCE").

Although this appeal turns on the 2007 agreement discussed herein, there are three agreements between the parties that this dispute revolves around and which give context for understanding the issues in this appeal:

| | |
|---|---|
| Jan 12, 2007 | Dempsey signed a document titled "Confidential Services, Trade Secrete, and Employment Agreement" with USMR (CR 28-39; 177-188). |
| Dec 10, 2010 | Dempsey signed a document titled "Employment Agreement" with USGCE (CR 41-56). |
| July 28, 2011 | Dempsey signed a document titled "Separation and Release Agreement" with USGCE (CR 58-63). |

USMR had filed suit against various defendants unrelated to the claims made against Dempsey; regarding this pending case, on March 29, 2012, USGCE filed a petition of intervention naming Dempsey as a party against whom it sought a temporary and permanent injunction and a money judgment related to alleged breaches of the

7

2010 and 2011 documents (CR 5-10). The following chronology of events took place in the trial court before this case:

| | |
|---|---|
| May 25, 2012 | Based on USGCE's petition of intervention the trial court signed an Order Granting Temporary Injunction" stating that Dempsey is enjoined, restrained, and prohibited from various activities related to USGCE and USMR (CR 14-16). |
| July 17, 2014 | USMR filed a fifteenth amended petition in the pending case adding Dempsey as a defendant and seeking injunctive and monetary relief against Dempsey based on the 2007, 2010, and 2011 agreements (CR 18-26). USMR claims that although the 2010 and 2011 agreements were not with USMR and Dempsey, they were with USMR's affiliate and Dempsey (CR 20). |
| July 31, 2014 | Trial court signed an order extending its TRO regarding Dempsey (CR 123-124). |
| Aug 6, 2014 | USMR took the depositions of Anthony Carifa in Beaumont, Texas (CR 151). |
| Oct 10, 2014 | USMR served 401 Gold Consultants, LLC and Dempsey with requests for production of documents (CR 157-159) and interrogatories (CR 160-164). |
| Oct 31, 2014 | USMR took the deposition of Jim Lovell in Houston, Texas (CR 149). |
| Nov 3, 2014 | USMR took the deposition of Dempsey in Beaumont, Texas (CR 155). |
| Nov 12, 2014 | USMR took the deposition by written question of Wells Fargo Bank so as to obtain the banking records of 401 Gold Consultants, LLC and Dempsey (CR 165-167). |
| Feb 9, 2015 | At USMR's request, the trial court conducted a status conference (CR 131). |
| Apr 7, 2015 | Dempsey files a motion requesting a trial setting (CR 136-137). |

8

Apr 20, 2015   Dempsey files a no-evidence motion for summary judgment arguing he and USMR "have not signed a non-compete agreement that is legally enforceable and therefore this motion should be granted unless [USMR] is able to present evidence of the existence of a val[id] non-compete agreement." (CR 138-139).

June 12, 2015   Dempsey filed a motion to stay arbitration arguing USMR had waived its right to arbitration by substantially invoking the judicial process (CR 144-169).

June 30, 2015   A hearing was conducted on Dempsey's motion to stay arbitration, and the motion was denied (Sup RR vol. 2, page 9).

July 1, 2015   Arbitration hearing was conducted without Dempsey being present (CR 206).

July 29, 2015   Arbitration award signed on behalf of USMR against Dempsey in the amount of $1,650,000.00 based on the liquidated damage provisions in the 2007 agreement (CR 206-211).

Aug 25, 2015   USMR filed a motion to confirm the arbitration award (CR 173).

Sept 8, 2015   Dempsey filed a response to the motion to confirm the arbitration award arguing the award should not be confirmed because USMR had waived arbitration by invoking the judicial process (CR 217-220).

Sept 10, 2015   The trial court signed a final judgment confirming the arbitration award and entering judgment on behalf of USMR against Dempsey in the amount of $1,650,000.00 (CR 222-223).

The trial court's judgment is based on the 2007 agreement between Dempsey and USMR, which contains two particularly relevant provisions; namely, an non-compete provision (CR 183-184), and an arbitration provision (CR 187-188). The non-compete

9

provisions prevent Dempsey from competing against USMR for five years after termination of employment "anywhere within the United States, United Kingdom and Canada" (CR 183-184). The arbitration provision "applies only to" claims of "wrongful discharge", "employment discrimination, harassment, or retaliation", "compensation disputes (with the exception of worker's compensation claims), ERISA violations and Fair Labor Standards Act (wage and hour) violations" (CR 187-188). The "arbitration provision does not apply to any dispute or allegation regarding breach of [the 2007 agreement], or to the right of [USMR] to obtain injunctive relief and recovery of liquidated damages as set forth in the [agreement.]" (CR 187-188). In this regard, the 2007 agreement clarifies that "any breach of this Confidential Services, Trade Secrets, and Employment Agreement by either Employer or Employee shall be resolved through litigation in a court of law" (CR 187-188).

* * * *

The non-compete and arbitration provisions contained in the 2007 agreement state verbatim as follows:

> 15. **Unauthorized Competition Prohibited.** The Employee expressly agrees that the Employee shall not, for a period of five (5) years after the termination of this Association or employment between Employer and

10

Employee, without prior written consent of the Employer, directly or indirectly through any corporation, organization or entity owned or controlled by the Employee, or as principal, agent, joint venture, employee, employer, consultant, partner, stock holder or holder of any equity or security (except less than 1% of any which is commonly publicly traded in recognized markets), in any other individual, representative or corporate capacity whatsoever:

a) Call upon, contact, solicit, divert, take away, or attempt to call upon, suppliers, businesses, or accounts of the Employer in connection with any business similar or related to the business within the above defined geographical area; nor will the Employee interfere with or compete with the Employer in connection with such clients, customers, suppliers, businesses, and accounts in the geographical area. The term client or customer as referenced in this covenant includes: (1) any clients or customers for whom Employer provided services at any time during Employee's employment with Employer; and (2) any prospective clients or customers to whom Employer had submitted a proposal for services as of the effective date of Employee's termination of employment with Employer.

b) Solicit for hiring, or hire, any past, present or future employee, agent, representative or consultant of the Employer.

c) Engage in, or give any advice to any person, firm, partnership, associations, corporations, or other entity engaged in an business similar to the business of the Employer or any portion thereof in the geographical area.

d) Lend credit, money, or reputation for the purpose of establishing or operating a business similar to the business, or any portion thereof, of the Employer in the geographical area.

e) Accept employment or pay from any person, firm, operation, partnership, association, or any other entity

11

engaged in a business similar to or related to the business of the Employer anywhere within the United States, United Kingdom and Canada. This provision specifically includes existing competitors of the Employer, and any potential, future competitors of Employer. This provision also specifically prohibits Employee from forming a competitive Employer or organization as an owner, sole proprietor, partner, joint venture (or in any other ownership capacity) competing against Employer. Similarly, this provision specifically prohibits Employee from getting or giving any advice, knowledge or information from or to any person, firm, partnership, association, corporation, or other entity engaged in a business similar to or related to the business of Employer or any portion thereof, within the United Kingdom, Canada or the United States.

f) It is expressly agreed, stipulated and understood by the Employee that the services of the Employer have been and are currently being marketed and sold in the geographical area described above, and it is the Employer's intent to continue to expand the marketability of its services and products. Accordingly, these covenants are intended to restrict the Employee from competing in any manner with the Employer in the activities, which have heretofore been carried on, by the Employee or any portion thereof or any activities similar or related thereto within the geographical area, for the full time frame set forth herein. The parties further stipulate, agree, and acknowledge that the covenants and agreements contained herein are being materially relied upon by the Employer in entering into this Agreement with Employee. Further, the parties acknowledge and agree that the promises, covenants and agreements set forth above regarding non-competition are ancillary to an otherwise enforceable agreement and supported by independent, valuable consideration as required by the current statute codified in the Texas Business and Commerce Code section 15.50, and all other applicable

requirements in place by judicial interpretation of such statutory section.  The Employee further acknowledges and agrees that the limitation as to time, geographical area, and scope of activity to be retrained are reasonable and acceptable to the Employee and do not impose any greater restraint than is reasonably necessary to protect the goodwill and other business interests of the Employer.  (CR 183-184).

27. **<u>Binding Arbitration of Certain Claims or Disputes.</u>**  Certain legal or equitable disputes or controversies, as identified herein and arising out of, or related to the employment of Employee, shall be resolved exclusively by binding arbitration.  This arbitration provision applies only to the following allegations, disputes, and claims for relief: wrongful discharge under federal or state statutory law, employment discrimination, harassment, or retaliation based on federal, state or local statute, ordinance, or governmental regulation; compensation disputes (with the exception of worker's compensation claims), ERISA violations and Fair Labor Standards Act (wage and hour) violations.  This provision shall apply to any such disputes or controversies involving Employee and the Employer and/or its shareholders, directors, officers, managers, supervisors, and other employees.  This arbitration provision applies to any of these claims by Employee against Employer, or also any claims by Employer against Employee, on the matters set forth above.

The parties agree and stipulate that this arbitration provision does not apply to any dispute or allegation regarding breach of this Confidential Services, Trade Secrets, and Employment Agreement by either party (as well as any defense that may be asserted to any such claim by either Party), or to the right of Employer to obtain injunctive relief and recovery of liquidated damages as set forth in the circumstances enumerated in this Agreement. That is, the Employer and Employee expressly agree that litigation in a court is the method to resolve any allegations by either the Employer or the Employee

regarding breach of any of the terms of this Confidential Services, Trade Secrets, and Employment Agreement.

Any arbitration proceedings shall be conducted in the city in which Employee's employment is based (unless Employee and Employer agree to another location) in accordance with the Employment Dispute Resolution Rules ("EDR Rules") of the American Arbitration Association ("AAA") in effect at the time a demand for arbitration is made.

Three (3) arbitrators shall be used and shall be chosen by mutual agreement of the parties, unless the AAA rules or methodology require differently. If, within thirty (30) days after either party notifies the other party of any arbitral dispute, arbitrators have not been chosen, arbitrators shall be chosen by AAA pursuant to its EDR Rules. The three (3) arbitrators must be attorneys licensed to practice law in the jurisdiction in which the arbitration is to be conducted. The three (3) arbitrators shall be required to determine the rights of the parties in accordance with the law of the forum with the must substantial relationship to the conduct at issue. The decision and award by the arbitrators shall be exclusive, final, and binding on both the Employee and the Employer, and all heirs, executors, administrators, successors, and assigns. The costs and expenses of the arbitration shall be borne equally by the parties.

Both Employee and Employer understand that, by agreeing to arbitration for these specific claims, they are agreeing to substitute on legitimate dispute resolution forum (arbitration) for another (litigation) for only the specific claims identified herein, and thereby are waiving their rights to have these specific disputes resolved in court. It is expressly understood and agreed, however, that any issues regarding the interpretation, enforcement, or any breach of this Confidential Services, Trade Secrets, and Employment Agreement by either Employer or Employee shall be resolved through litigation in a court of law subject to the venue provisions set forth supra. Furthermore, it is expressly understood and agreed that

14

Employer has the right to seek in a court of law all injunctive relief set forth supra, all liquidated damages, all actual and consequential damages, and any other remedy or damage provided by law in the event Employee breaches this Confidential Services, Trade Secretes, and Employment Agreement. The use of the ligation process for the claims identified in this section does not waive the enforceability of the arbitration provisions for the claims that are subject to arbitration, as set forth above. (CR 187-188).

# SUMMARY OF ARGUMENT

The 2007 arbitration agreement between Dempsey and USMR states that the arbitration provision does not apply to any dispute or allegation regarding breach of the 2007 agreement, or to the right of USMR to obtain injunctive relief and recovery of liquidated damages as set forth in the agreement. In spite of this, USMR sought arbitration based precisely on its claim that Dempsey breached the 2007 agreement and sought liquidated damages based on the terms of the 2007 agreement. Although a valid arbitration agreement exists between USMR and Dempsey, the claims asserted in USMR's pleadings do not fall within the scope of the arbitration provision contained in the agreement. Additionally, USMR substantially invoked the judicial process and thus waived any arguable right to submit its claims to arbitration. Therefore, it was error for the trial court to deny Dempsey's motion to stay arbitration, deny his motion to set the case for a jury trial, refuse to consider his no-evidence motion for summary judgment, and overrule his objection to confirmation of the arbitration award.

# ARGUMENT AND AUTHORITIES

Arbitration agreements are regulated by the Federal Arbitration Act (FAA) and the Texas General Arbitration Act (TGAA). *See* 9 U.S.C. § 1, *et seq.*; TEX. CIV. PRAC. & REM. CODE § 171.001, *et seq.* The substantive principles applicable to the analysis of the FAA and the TGAA are the same under either act, and therefore the cases decided under the FAA and the TGAA are interchangeable. *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 n.10 (Tex. 2008).

In determining whether to compel an arbitration agreement, the trial court must consider "(1) whether a valid arbitration agreement exists, and (2) if so, whether the claims asserted fall within the scope of the agreement." *Nationwide of Fort Worth, Inc. v. Wigington*, 945 S.W.2d 883, 884 (Tex. App.—Waco 1997, writ dism'd w.o.j.). If the trial court determines that a valid agreement exists, "the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (orig. proceeding). "Once the trial court concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses, the trial court has do discretion but to compel arbitration

and stay its own proceedings." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753-54 (Tex. 2001) (orig. proceeding).

Whether arbitration is required is a matter of contract interpretation, and the enforceability of an arbitration provision is a question of law for the court. *In re Dillard Dep't Stores, Inc.* 198 S.W.3d 778, 781 (Tex. 2006) (orig. proceeding); *J.M. Davidson, Inc.*, 128 S.W.3d at 227. Even if there is an enforceable arbitration provision, the right to require a party to the provision to submit to arbitration is subject to waiver by substantially invoking the judicial process to the other party's detriment. *Perry Homes v. Cull*, 258 S.W.3d 580, 589-90 (Tex. 2008); *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 574-75 (Tex. 2014) (per curiam). "Whether a party has substantially invoked the judicial process depends on the totality of the circumstances; key factors include the reason for delay in moving to enforce arbitration, the amount of discovery conducted by the movant, and whether the movant sought disposition on the merits." *Richmont Holdings, Inc.*, 455 S.W.3d at 575 (citing *Perry Homes*, 288 S.W.3d at 590-93).

Here, there was an arbitration agreement between Dempsey and USMR, except that the agreement specifically states that the

18

"arbitration provision does not apply to any dispute or allegation regarding breach of [the 2007 agreement], or to the right of [USMR] to obtain injunctive relief and recovery of liquidated damages as set forth in the [agreement.]" (CR 187-188). In spite of this, the arbitration award is based on breach of the 2007 agreement and the liquidated damages provision contained therein. Dempsey did not appear at the arbitration hearing and thus USMR cannot say that he agreed at the arbitration proceeding to have the subjects not covered by the arbitration provision nevertheless determined by the arbitrators. The only evidence as to what Dempsey agreed to submit to arbitration is the 2007 agreement itself. Yet the 2007 agreement specifically states that the subject matter upon which the arbitration award is based on is *not subject to arbitration*. In short, although a valid arbitration agreement exists between Dempsey and USMR, the claims that the arbitration award are based on do not fall within the scope of the 2007 agreement. *Wigington*, 945 S.W.2d at 884. Accordingly, the trial court erred in denying Dempsey's motion to stay arbitration, in denying his motion to set the case on for a jury trial, in refusing to consider his no-evidence motion for summary judgment, and in overruling his objection to USMR's motion to

19

confirm the arbitration award. For this reason alone, this Court should set aside the trial court's order confirming the arbitration award.

Additionally, the arbitration award was entered only after USMR had substantially invoked the judicial process in pursuing its theory that Dempsey had breached the 2007 agreement. Under the totality of the circumstances presented in this case, there is no excuse for USMR to have delayed so long in seeking arbitration; in fact, USMR only sought arbitration after Dempsey filed a motion requesting a trial setting and moved for no-evidence summary judgment arguing he and USMR "have not signed a non-compete agreement that is legally enforceable" (CR 136-137; 138-139). USMR also sought and obtained temporary injunctive relief, filed fifteen amended petitions, took three deposition, including Dempsey's, served written discovery on Dempsey, which Dempsey responded to, and obtained Dempsey's banking records from Wells Fargo via deposition by written questions. All of this went on for over three years before USMR went to arbitration. There is no excuse presented by USMR for this delay, and no excuse is apparent from the record, other than the fact that it was called upon to prove its case against

Dempsey when confronted with the no-evidence motion for summary judgment and Dempsey's request for a jury trial setting. This same evidence shows the detriment to Dempsey because the point of arbitration is to create a convenient and less costly alternative forum other than the courts; given that the case was fully worked up for trial, the advantages of convenience and affordability had been eliminated by USMR's substantial invocation of the judicial process. Thus, Dempsey is detrimentally affected by USMR's actions by losing the convenience and affordability that the arbitration clause, had it been timely invoked by USMR, would have provided. For these reasons, it is clear that USMR has waived any right it might have had under the 2007 agreement to force the dispute into arbitration.

# PRAYER

Accordingly, appellants, John C. Dempsey a/k/a Jack Dempsey and Gold Consultants, prays that this Court reverse and remand the trial court's final judgment confirming the award of arbitration.

21

Respectfully submitted,

/s/Timothy A. Hootman
Timothy A. Hootman
SBN 09965450
2402 Pease St
Houston, TX 77003
713.247.9548
713.583.9523 (f)
E-mail: thootman2000@yahoo.com

ATTORNEY FOR APPELLANTS, JOHN C.
DEMPSEY A/K/A JACK DEMPSEY AND
GOLD CONSULTANTS

# CERTIFICATE OF WORD COUNT

I hereby certify that, in accordance with Rule 9.4 of the Texas Rules of Appellate Procedure, that the number of words contained in this document are 3,990 according to the computer program used to prepare this document.

Dated: December 23, 2015.

/s/Timothy A. Hootman
Timothy A. Hootman

# CERTIFICATE OF SERVICE

I hereby certify that, in accordance with Rule 9.5 of the Texas Rules of Appellate Procedure, I have served the forgoing document upon the following attorneys by electronic service:

John Werner
REAUD, MORGAN & QUINN, L.L.P.
P.O. Box 26005
Beaumont, TX 77720-6005

Dated: December 23, 2015.

/s/Timothy A. Hootman_____
Timothy A. Hootman

FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
9/10/2015 9:50:48 AM
JAMIE SMITH
DISTRICT CLERK
A-180741-J

CAUSE NO. A-180741-J

| | | |
|---|---|---|
| U.S. MONEY RESERVE, INC., D/B/A UNITED STATES RARE COIN & BULLION RESERVE | § § | IN THE DISTRICT COURT OF |
| VS. | § | JEFFERSON COUNTY, TEXAS |
| CECIL A. ROBERTS, INDIVIDUALLY AND D/B/A UNITED STATES MONEY EXCHANGE, JASON GERARD BRAQUET, ED SEYMOUR, INDIVIDUALLY AND D/B/A JTB COINS, CHAD POOLE, TERRY FINLEY AND BILL TRUMAN | § § § | 58TH  JUDICIAL DISTRICT |

## ORDER

CAME ON THIS DAY to be heard Plaintiff's Motion to Confirm Arbitration Award Against JOHN C. DEMPSEY and ANTHONY "TONY" CARIFA, and the Court, having considered Plaintiff's Motion to Confirm Arbitration Award Against JOHN C. DEMPSEY and ANTHONY "TONY" CARIFA, is of the opinion that it should be GRANTED, therefore;

It is ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion to Confirm Arbitration Award Against JOHN C. DEMPSEY and ANTHONY "TONY" CARIFA be and is hereby in all things GRANTED.

It is further, ORDERED, ADJUDGED AND DECREED that USMR, do have and recover the sum of $1,650,000.00 from Mr. Dempsey for USMR's breach of contract claim, together with interest at the highest rate allowed by law.

It is further, ORDERED, ADJUDGED AND DECREED that USMR, do have and recover the sum of $1,050,000.00 from Mr. Carifa for USMR's breach of contract claim, together with interest at the highest rate allowed by law.

222

It is further ORDERED, ADJUDGED AND DECREED that all costs of Court be taxed against Defendants, and that execution issue to implement collection and enforcement of this Judgment.

All relief not expressly granted herein is denied.

Signed this 10th day of ~~August~~ September, 2015.

_____
JUDGE PRESIDING