# Supreme Court of Texas

═══════

No. 22-0214

═══════

Houston AN USA, LLC d/b/a AutoNation USA Houston,

*Petitioner*,

v.

Walter Shattenkirk,

*Respondent*

═══════════

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

═══════════

**Argued February 21, 2023**

JUSTICE LEHRMANN delivered the opinion of the Court.

The issue in this employment-discrimination suit is whether an arbitration agreement is unconscionable, and thus unenforceable, on the ground that the costs associated with arbitration are so excessive they would foreclose the employee from pursuing his claims. The court of appeals held that the agreement is unconscionable and affirmed the trial court's order denying the employer's motion to compel arbitration. Because the burden is on the party resisting arbitration to prove unconscionability, and because the evidence does not rise above the

speculative "risk" that the employee will actually incur prohibitive costs, we reverse the court of appeals' judgment.

## I. Background

Petitioner Houston AN USA, LLC d/b/a AutoNation USA Houston, which owns a car dealership in Houston, hired Respondent Walter Shattenkirk in May 2017 to be the dealership's general manager. According to AutoNation, as part of the onboarding process Shattenkirk electronically signed and accepted an arbitration agreement requiring arbitration of all claims and disputes arising from, related to, or connected with Shattenkirk's employment, including termination and discrimination claims. The agreement, which AutoNation attached to its motion to compel arbitration in this suit, states that any arbitration conducted thereunder will be governed by the Federal Arbitration Act (FAA) and "in conformity with the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and the substantive law governing the claims pled." The agreement provides for a single arbitrator who "shall be a retired judge or licensed attorney with experience serving as an arbitrator, as mutually agreed to by the parties." Notably, the agreement does not: specify any arbitration rules—such as American Arbitration Association (AAA) or JAMS rules—that would apply to a proceeding; designate a particular arbitration organization to conduct the arbitration; or discuss arbitration costs or how they would be allocated between the parties.

Shattenkirk alleges that in August 2017, he heard one of his superiors make racist comments and reported the incident to a senior director. The following month, AutoNation placed Shattenkirk on a

Performance Improvement Plan. On November 6, 2017, AutoNation terminated Shattenkirk's employment. Shattenkirk claims his termination was due to discrimination and in retaliation for his reporting the racist comments. AutoNation's position is that it terminated Shattenkirk for poor performance.

After Shattenkirk obtained a right-to-sue letter from the Equal Employment Opportunity Commission, the parties' attorneys corresponded about arbitration logistics. The discussions largely involved attempts to agree on an arbitrator, though the attorneys also communicated about the arbitration agreement's silence on costs and governing rules. AutoNation's attorney noted in one email that "AutoNation and the Claimant usually agree to split the arbitration costs," but no further discussion ensued on that topic.

When additional efforts to agree on an arbitrator proved unsuccessful, Shattenkirk sued AutoNation for race discrimination and retaliation under federal and state law. AutoNation moved to compel arbitration and to stay or dismiss the lawsuit. Shattenkirk opposed the motion on the grounds that (1) AutoNation failed to present sufficient evidence that he signed the arbitration agreement or, alternatively, (2) the agreement is unconscionable, and thus invalid, because excessive arbitration costs will likely preclude him from effectively vindicating his statutory rights. To support his unconscionability defense, Shattenkirk submitted his own affidavit, his attorney's affidavit, and an invoice from an unrelated employment arbitration conducted by the AAA. The trial court denied the motion to compel, and AutoNation appealed the order. *See* TEX. CIV. PRAC. & REM. CODE § 51.016; 9 U.S.C. § 16.

The court of appeals affirmed, holding that the agreement was unconscionable because Shattenkirk produced uncontroverted evidence that he would likely be required to incur prohibitive arbitration costs. 657 S.W.3d 331, 336–37 (Tex. App.—Houston [14th Dist.] 2022). The court did not address whether Shattenkirk signed the agreement. *Id.* at 337 n.3. We granted AutoNation's petition for review.

## II. Discussion

Under the FAA, a party seeking to compel arbitration must establish the existence of a valid arbitration agreement and demonstrate that the disputed claims fall within the scope of that agreement. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 282 (Tex. 2021). As the court of appeals noted, the parties agree that the FAA applies and that, if the parties entered into a valid arbitration agreement, Shattenkirk's claims fall within its scope.

### A. Applicable Law on Prohibitive Arbitration Costs

We apply Texas law to determine the validity of an agreement to arbitrate under the FAA. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 347 (Tex. 2008). Under Texas law, an unconscionable contract is unenforceable. *Id.* at 348. "[T]he theory behind unconscionability in contract law is that courts should not enforce a transaction so one-sided, with so gross a disparity in the values exchanged, that no rational contracting party would have entered the contract." *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 892 (Tex. 2010) (citing RESTATEMENT (SECOND) OF CONTRACTS § 208 cmt. b (AM. L. INST. 1981)). In limited circumstances, the cost of arbitration can render an agreement to arbitrate

4

unconscionable. *See Poly-Am.*, 262 S.W.3d at 356 (holding that arbitration provisions in an employment agreement "that operate to prohibit an employee from fully and effectively vindicating statutory rights are not enforceable").

A party opposing arbitration on the ground that the prohibitive cost of arbitrating renders the agreement to do so unconscionable has the burden of proof. *Olshan*, 328 S.W.3d at 893 (citing *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 90 (2000)). To meet that burden, the party must present "some evidence" that it "will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum." *Id.* (quoting *Poly-Am.*, 262 S.W.3d at 356) (emphasis omitted). Pertinent factors include whether "the total cost of arbitration is comparable to the total cost of litigation" and "the claimant's overall ability to pay the arbitration fees and costs." *Id.* at 894–95.[1] Further, making the required showing entails presenting more than evidence of the "risk" of incurring excessive costs; it requires "specific evidence that a party will actually be charged excessive arbitration fees." *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) (citing *Green Tree*, 531 U.S. at 90–91); *see also Olshan*, 328 S.W.3d at 895 ("While we do not mandate that claimants actually incur the cost of arbitration before they can show its excessiveness, parties must at least provide evidence of the likely cost of their particular arbitration,

---

[1] In *Olshan*, we explained that if the costs of proceeding in the two forums are comparable, that effectively ends the inquiry because it renders the arbitral forum "equally accessible." 328 S.W.3d at 894–95.

5

through invoices, expert testimony, reliable cost estimates, or other comparable evidence.").[2]

In analyzing claims of excessive arbitration costs, courts must consider how the agreement addresses the allocation of those costs. In *In re FirstMerit Bank*, the agreement, like the one at issue here, did not mention arbitration costs at all. 52 S.W.3d 749, 757 (Tex. 2001). The plaintiffs, who asserted numerous claims premised on their purchase of an allegedly defective mobile home, presented evidence of the AAA's general filing and administrative fees but "no evidence that the AAA would actually conduct the arbitration or charge the specified fees." *Id.* We also noted that the AAA's commercial arbitration rules gave the AAA discretion to defer or reduce administrative fees in cases of extreme hardship. *Id.* For those reasons, we held that the plaintiffs failed to present legally sufficient evidence that they "would be denied access to arbitration based on excessive costs." *Id.*; *see also U.S. Home Corp.*, 236 S.W.3d at 763–64 (holding that a schedule of the AAA's usual fees was "not enough" to invalidate an agreement to arbitrate "in accordance with the [AAA's] Commercial or Construction Industry Arbitration Rules, as appropriate").

---

[2] AutoNation broadly asks us to revisit our jurisprudence on the unconscionability defense to contract enforcement, arguing that "most courts of appeals have [erroneously] made it easier to prove that an arbitration agreement is unconscionable than any other type of contract." We need not do so here, however, because Shattenkirk's evidence falls short of the evidence necessary to hold an arbitration agreement unenforceable under our existing unconscionability precedent. We express no opinion on the applicability of the unconscionability defense beyond the facts and circumstances presented.

Our analysis of arbitration costs in *In re Poly-America*, an employment-retaliation case, is also instructive. The agreement in that case provided that the costs would be split, with the employee's share capped at an amount tied to his earnings. 262 S.W.3d at 344. We explained that the claimant "has not demonstrated that the ability to pursue his claim in the arbitral forum hinges upon his payment of the estimated costs; to the contrary, depending upon the circumstances, [the claimant] may not have to bear any cost at all." *Id.* at 356. Further, we saw "nothing that would prevent arbitrators from fairly adjusting employee cost provisions when necessary to allow full vindication of statutory rights in the arbitral forum," particularly in light of the agreement's provision that "the arbitrator may modify unconscionable terms." *Id.* at 357.

Finally, we find guidance in *Olshan*, in which homeowners who sued Olshan for improper foundation repairs had signed contracts requiring arbitration of disputes to be administered by the AAA and in accordance with the AAA's commercial arbitration rules. 328 S.W.3d at 886–87. In arguing that the prohibitive cost of arbitration rendered the agreement unenforceable, the homeowners provided AAA invoices for other arbitrations in allegedly similar cases. *Id.* at 897. We held that a showing of the arbitration costs incurred by other claimants "falls well short of specific evidence that these particular parties will be charged excessive fees" given the absence of evidence that the homeowners' claims were similar in amount or difficulty or that the homeowners had "made any effort to reduce the likely charges" through, for example, requests for fee waivers or pro bono arbitrators. *Id.* Further, the

7

homeowners provided no evidence of the comparison of arbitration and litigation costs or their ability to pay. *Id.*

## B. Analysis

With this guidance in mind, we turn to the evidence Shattenkirk presented to support his assertion that excessive arbitration costs prevent him from effectively pursuing his discrimination and retaliation claims in the arbitral forum. First, Shattenkirk presented an invoice from the AAA charging $34,104 for an unrelated employment-discrimination case that included a three-day hearing. In an accompanying affidavit, Shattenkirk's attorney averred that Shattenkirk's case is more complicated and the trial will likely be longer. By contrast, the attorney attested that the cost to litigate in court "would likely be a few hundred dollars." He further averred that conducting the arbitration in conformity with the Federal Rules of Civil Procedure and the Federal Rules of Evidence, as the agreement requires, will make the arbitration even more costly. Finally, Shattenkirk presented his own affidavit in which he stated that he was unemployed from November 2017 until February 2020, that he currently earns significantly less than when he worked for AutoNation, that he has incurred significant debt, and that incurring costs "above what it would cost me to litigate in Court will pose even further significant hardship on my family and will push my finances further into debt." AutoNation did not object to Shattenkirk's evidence or present any responsive evidence regarding arbitration costs.

As in *FirstMerit Bank*, *Poly-America*, and *Olshan*, this evidence falls short of demonstrating that Shattenkirk will actually be charged

8

fees that would prevent him from effectively vindicating his statutory rights in the arbitral forum.

First, as we recognized in *Olshan*, "the crucial inquiry is whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation." 328 S.W.3d at 894. The AAA invoice submitted by Shattenkirk, together with the attorney's affidavit, arguably provides a reasonable estimate of the fees associated with the arbitration itself. However, we cannot assess whether those fees are what would prohibit Shattenkirk from pursuing his rights without knowing (1) how that amount relates to the overall expense of litigating versus arbitrating and (2) Shattenkirk's ability to afford the former but not the latter. On those points, the evidence is quite vague and conclusory. Shattenkirk broadly attested that paying "anything above" the cost to litigate would cause him financial hardship, but the anticipated cost to litigate, which Shattenkirk indicates he can afford, is itself unclear. Shattenkirk's attorney summarily stated that litigation "would likely be a few hundred dollars," but that statement appears to take no litigation costs into account other than filing fees associated with initiating the suit. Again, absent concrete evidence that the *increased* cost associated with arbitration, compared to litigation, is what forecloses a party from pursuing his claims, the party cannot show that those costs are what make the expense of arbitrating "prohibitive."[3]

---

[3] Perhaps Shattenkirk and his attorney have entered into a contingency-fee agreement pursuant to which the attorney will cover litigation costs and Shattenkirk will owe no costs or attorney's fees unless and until he recovers damages from AutoNation. But no evidence of such an agreement is in the record.

Second, to the extent Shattenkirk has demonstrated that paying even half the anticipated arbitration fees would prohibit him from pursuing claims that he could otherwise afford to litigate, nothing in the record indicates that Shattenkirk will actually incur those costs. *See Poly-Am.*, 262 S.W.3d at 356 (noting that the claimant "has not demonstrated that the ability to pursue his claim in the arbitral forum hinges upon his payment of the estimated costs"). As Shattenkirk recognizes, arbitration organizations like the AAA and JAMS have "standard and customary [employment arbitration] rules" requiring the employer to pay all costs except an initial filing fee. Shattenkirk argues that because the arbitration agreement at issue fails to similarly allocate arbitration fees to the employer, the agreement on its face renders the arbitral forum inaccessible. As discussed below, that assertion misstates the burden of proof and reads language into the agreement that simply is not there. A court may not nullify an otherwise valid agreement to arbitrate based on purely speculative assumptions about the burdens of compelling arbitration.

Again, the agreement is silent on arbitration costs. Shattenkirk's reliance on case law invalidating agreements that affirmatively split such costs, assuming those cases were correctly decided, is thus misplaced, at least at this stage. *See, e.g., AOF Servs., LLC v. Santorsola*, No. 13-14-00641-CV, 2016 WL 1165829, at *3–4 (Tex. App.—Corpus Christi–Edinburg Mar. 24, 2016, no pet.) (holding that a fee-splitting provision rendered an arbitration agreement unconscionable where there was no cap on the amount the claimant would be required to pay, no allowance for the arbitrator to modify the

10

percentage of compensation owed by either party, and some evidence that paying the likely cost would prevent the claimant from enforcing his statutory rights). Shattenkirk seems to assume that he will be responsible for half the arbitration fees, and the court of appeals similarly viewed the evidence as establishing that AutoNation "would require Shattenkirk to split the costs of arbitration." 657 S.W.3d at 336. The only support for that conclusion is an email from AutoNation's counsel stating that "AutoNation and the Claimant usually agree to split the arbitration costs." That email is a far cry from establishing that AutoNation even could, let alone would, require Shattenkirk to split arbitration costs. *See FirstMerit Bank*, 52 S.W.3d at 756 (noting the Supreme Court's holding that "an arbitration agreement's mere silence with respect to costs and fees, by itself, is a 'plainly insufficient' basis for invalidating the agreement" (quoting *Green Tree*, 531 U.S. at 91)).

We emphasize that our holding should not be understood to encourage silence in arbitration agreements regarding payment terms, much less to imply that such silence entails no consequences. Our holding is far more limited. Assuming that Shattenkirk signed the agreement (a question on which we express no opinion), he clearly agreed to arbitrate. He cannot leverage the contractual silence about who would pay to summarily avoid the arbitration agreement he made. *See Green Tree*, 531 U.S. at 91. However, a bare agreement to arbitrate does not in and of itself necessarily include an agreement about what Shattenkirk will pay.

For this reason, it is premature for us, or any court, to assess unconscionability—or, said differently, why Shattenkirk cannot, at this

stage, meet his burden to defeat arbitration on that ground. When one party, like AutoNation, invokes its right to arbitrate a dispute, it must show some basis grounded in a contract or other binding law to compel the other party, like Shattenkirk, not only to submit to arbitration but also to pay some particular amount toward the costs of that arbitration. Here, if the court of appeals determines on remand that Shattenkirk signed the arbitration agreement, perhaps AutoNation will decide to pay for the arbitration itself, thus eliminating any dispute about payment terms and, in turn, foreclosing unconscionability as a ground for avoiding arbitration. If AutoNation insists on some payment from Shattenkirk, and Shattenkirk resists arbitration on that ground, only then will the court have to address the legal basis for Shattenkirk's obligation to pay and, if so, what amount. And only once that question is answered would an assessment of unconscionability be ripe for judicial consideration.[4] In other words, the question Shattenkirk presents to us today may never even arise, and if it does, it will be because of how several antecedent questions are resolved. Had the arbitration agreement not been silent, none of these problems would have arisen.

---

[4] If the parties in fact reach this point, the resulting analysis would no longer depend on speculation but would be grounded on a factual record regarding Shattenkirk's actual obligations. For example, if the parties proceed with "standard" cost allocation as reflected by the AAA and JAMS rules governing employment arbitrations, the vast majority of the costs will be allocated to AutoNation, the employer. Based on the evidence presented, concluding that costs will likely be allocated in such a way as to make arbitration prohibitively expensive for Shattenkirk would be, at best, premature now, but further development of the case would convert that speculation into something more certain.

We describe this analytical pathway only to explain why our decision today is as limited as it is: that, as the party opposing arbitration, Shattenkirk has not met his burden of proving the likelihood of incurring prohibitive arbitration costs. *See Olshan*, 328 S.W.3d at 897. At least at this stage, "the 'risk' that [Shattenkirk] will be saddled with prohibitive costs is too speculative to justify the invalidation of [the] arbitration agreement." *Poly-Am.*, 262 S.W.3d at 356 (citation omitted). As explained, the agreement's silence on arbitration costs does not foreclose the "risk" that Shattenkirk will be saddled with prohibitive costs, but neither does it indicate that he will actually be charged such costs. The silence cuts both ways, so it is no evidence of either. Accordingly, we hold that, at this point, the evidence is legally insufficient to support a finding that excessive arbitration fees prevent Shattenkirk from effectively pursuing his claims in the arbitral forum. *See id.*

### III. Conclusion

Because the court of appeals erroneously held that the evidence supports the trial court's finding that the arbitration agreement is unconscionable, we reverse the court of appeals' judgment. We remand the case to that court to address in the first instance the parties' issues regarding whether Shattenkirk signed the agreement.

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** May 26, 2023

13