ACCEPTED
07-17-00295-cv
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
9/1/2017 12:20 PM
Vivian Long, Clerk

CAUSE NO. 07-17-00295-CV

COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
9/1/2017 12:20:22 PM
VIVIAN LONG
CLERK

KAROLYN SHEPHERD, INDIVIDUALLY AND AS CO-SUCCESSOR TRUSTEE OF THE BURGE FAMILY REVOCABLE TRUST, JUDY KAY STEVENSON, INDIVIDUALLY AND AS BENEFICIARY OF THE BURGE FAMILY REVOCABLE TRUST, JON MARK SHEPHERD, INDIVIDUALLY AND GIRARD SECURITIES, INC.,

Appellants

v.

BOBBY BURGE, INDIVIDUALLY AND AS BENEFICIARY OF THE BURGE FAMILY REVOCABLE FAMILY TRUST,

Appellees.

Appealed from the 72ND District Court
of Lubbock County, Texas

# APPELLANT SHEPHERD'S BRIEF

KESSLER & COLLINS, P.C.
GARY S. KESSLER
State Bar No. 11358200
gsk@kesslercollins.com
DANIEL P. CALLAHAN
State Bar No. 03648700
dpc@kesslercollins.com
PHILIP G. McNICHOLAS
State Bar No. 24078987
pgm@kesslercollins.com
2100 Ross Avenue, Suite 750
Dallas, Texas 75201
(214) 379-0722 Telephone
(214) 373-4714 Facsimile
**COUNSEL FOR APPELLANT**

**ORAL ARGUMENT NOT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

**Appellants:**

JON MARK SHEPHERD

Represented by:

Gary S. Kessler
State Bar No. 11358200
gsk@kesslercollins.com
DANIEL P. CALLAHAN
State Bar No. 03648700
dpc@kesslercollins.com
PHILIP G. McNICHOLAS
State Bar No. 24078987
KESSLER & COLLINS, P.C.
2100 Ross Avenue, Suite 750
Dallas, Texas 75201
(214) 379-0722 Telephone
(214) 373-4714 Facsimile

**Other Appellant:**

GIRARD SECURITIES, INC.

Represented by:

Martin S. Schnexnayder
Eron F. Reid
WINGET, SPADAFORA & SCHWARTZBERG, LLP
Two Riverway, Suite 725
Houston, Texas 77056
(713) 343-9200 Telephone
(713) 343-9201 Facsimile
Schnexnayder.m@wssllp.com
Reid.e@wssllp.com

**Appellees:**

BOBBY BURGE, INDIVIDUALLY
AND AS BENEFICIARY OF BURGE FAMILY
REVOCABLE TRUST
Represented by:

J. Paul Manning
Field, Manning, Stone, Hawthorne & Aycock, P.C.
2112 Indiana Avenue
Lubbock, Texas  79410
(806) 792-0810 Telephone
(806) 792-9148 Facsimile
jpmanning@lubbocklawfirm.com

# TABLE OF CONTENTS

**Page(s)**

LIST OF ALL PARTIES AND COUNSEL ..... ii

INDEX OF AUTHORITIES ..... vi, vii, viii

I. STATEMENT OF THE CASE ..... 1

II. STATEMENT REGARDING ORAL ARGUMENT ..... 1

III. ISSUES PRESENTED ..... 1

IV. STATEMENT OF FACTS ..... 2

A. THE PARTIES AND BURGE'S CLAIMS ..... 2
B. THE ARBITRATION AGREEMENT AND THE MOTIONS TO COMPEL ARBITRATION ..... 3

V. SUMMARY OF THE ARGUMENT ..... 6

VI. ARGUMENT AND AUTHORITIES ..... 6

A. JURISDICTION, ARBITRABILITY STANDARDS AND STANDARD OF REVIEW ..... 6
1. JURISDICTION FOR INTERLOCUTORY APPEAL ..... 6
2. ARBITRATION STANDARDS ..... 7
3. STANDARD OF REVIEW ..... 8
B. THE TRIAL COURT ERRED IN FAILING TO COMPEL ARBITRATION OF BURGE'S CLAIMS AGAINST GIRARD AND SHEPHERD BECAUSE A VALID AGREEMENT TO ARBITRATE SUCH CLAIMS EXISTED BETWEEN BURGE AND GIRARD AND SHEPHERD ..... 8
C. TEXAS RULES OF CONTRACT CONSTRUCTION ARE APPLICABLE TO THE DETERMINATION OF WHETHER A VALID AGREEMENT TO ARBITRATE EXISTED ..... 10
D. BURGE'S CLAIMS FALL WITHIN THE SCOPE OF THE ACCOUNT DOCUMENTS' ARBITRATION PROVISIONS ..... 12

CONCLUSION AND PRAYER ..............................................................................15

CERTIFICATE OF SERVICE ................................................................................ 16

APPENDIX……………………………………………………………………17

# INDEX OF AUTHORITIES

**CASES** **PAGE(S)**

**Cases**

*Capital Income Properties-LXXX v. Blackmon,*
843 S.W.2d 22 (Tex. 1992) ......................................................................15

*Chambers v. O'Quinn,*
305 S.W.3d 141, 146 (Tex.App–Houston [1st Dist] 2009, pet denied). ..........7

*Citizens Nat'l Bank v. Tex. & P. Ry. Co.,*
136 Tex. 333, 150 S.W.2d 1003, 1006 (1941) ...........................................12

*City of Pinehurst v. Spooner Addition Water Co.,*
432 S.W.2d 515, 518 (Tex. 1968) ..............................................................11

*Emerald Texas, Inc. v. Peel,*
920 S.W.2d 398, 404(Tex.App. – Houston [1st Dist. 1996, no pet.)............13

*In re BNP Paribas,*
13-07-353-CV, 2008 WL 2208933, at *3-4 (Tex. App.—Corpus Christi May 29, 2008, no pet.)......................................................................... 12, 13

*In re D. Wilson Const. Co.,*
196 S.W.3d 774, 783 (Tex. 2006) ........................................................... 7, 12

*In re FirstMerit Bank,*
52 S.W.3d 749, 754 (Tex.2001) ................................................ 7, 10, 11, 14

*In re J.D. Edwards World Solutions, Co.,*
87 S.W.3d 546, 549 (Tex.2002) .................................................................12

*In re Merrill Lynch & Co.,*
315 S.W.3d 888, 891, n. 3 (Tex. 2010) .....................................................6, 7

*In re Merrill Lynch Trust Co. FSB,*
235 S.W.3d 185, 190 (Tex. 2007) ..............................................................13

*In re Mission Petroleum Carriers, Inc.*,
13-04-00550-CV, 2005 WL 326848, at *2 (Tex. App.—Corpus Christi Feb. 11, 2005, no pet.) ........................................ 13

*In re Palm Harbor Homes, Inc.*,
195 S.W.3d 672, 678 (Tex. 2006) ........................................ 10

*In re Prudential Sec., Inc.*,
159 S.W.3d 279, 283 (Tex.App.—Houston [14th Dist.] 2005, orig. proceeding) ........................................ 14

*In re Vesta Ins. Group, Inc.*,
192 S.W.3d 759, 762 (Tex. 2006) ........................................ 12

*Jack B. Anglin Co., Inc. v. Tipps*,
842 S.W.2d 266, 268 (Tex. 1992) ........................................ 7, 9, 13

*J.M. Davidson, Inc. v. Webster*,
128 S.W.3d 223, 229 (Tex. 2003) ........................................ 10

*Meyer v. WMCO-GP, LLC*,
211 S.W.3d 302 (Tex. 2006) ........................................ 12

*Myers v. Gulf Coast Minerals Mgmt. Corp.*,
361 S.W.2d 193 ........................................ 12

*Pennzoil Company v. Arnold Oil Company, Inc.*,
30 S.W.3d 494, 498 (Tex.App.—San Antonio 2000, orig. proceeding) ....... 13

*Prudential Sec. Inc. v. Marshall*,
909 S.W.2d 896, 900 (Tex. 1995) ........................................ 12, 14

*R & P Enters. v. LaGuarta, Garvel & Kirk, Inc.*
596 S.W.2d 517. 518 (Tex. 1980) ........................................ 10

*Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*,
327 S.W.3d 859, 862-63 (Tex. App.—Dallas 2010, no pet.) ........................................ 8

*Spence & Howe Construction Co. v. Gulf Oil Corp.*,
365 S.W.2d 631 (Tex. Sup. 1963) ........................................ 11

*Valence Operating Co. v. Dorsett,*
164 S.W.3d 656, 661 (Tex. 2005) ....................................................................10

*Valero Energy Corp. v. Wagner & Brown*,
777 S.W.2d 564, 566 (Tex. App. – El Paso 1989, writ denied)............. 10, 13

*Wee Tots Pediatrics, P.A. v. Morohunfola,*
268 S.W.3d 784 (Tex. App.—Fort Worth 2008, no pet.) .............................14

**STATUTES**

TEX. CIV. PRAC. & REM. CODE §51.016................................................................1, 6
TEX.CIV.PRAC. & REM. CODE §171.021(a)..............................................................8
TEX. CIV. PRAC. & REM. CODE §171.023(b) ..........................................................9
TEX. CIV. PRAC. & REM. CODE §171.025 ...............................................................8
TEX.CIV.PRAC. & REM. CODE § 171.098 ..............................................................1, 6

9 U.S.C. §1 ..........................................................................................................6
9 U.S.C. §3 ..........................................................................................................8
9 U.S.C. §16(a)(1)(A)-(C) ....................................................................................6

**OTHER**

Texas Arbitration Act (Chpt. 171 of the Business & Commerce Code)...................8

TO THE HONORABLE COURT OF APPEALS:

COMES NOW Appellant Jon Mark Shepherd ("Shepherd") and files this *Appellant's Brief* and would respectfully show the Court as follows:

**I. STATEMENT OF CASE.**

Appellee Bobby Burge ("Burge") has filed suit against several Defendants and asserts causes of action related to, among other things, two brokerage accounts that had been opened with Girard Securities, Inc. ("Girard"), a registered broker-dealer. Shepherd was a registered representative of Girard.

Appellants Shepherd and Girard both moved to compel arbitration of the claims asserted against them pursuant to the arbitration agreements contained in the account opening documents and to stay proceedings in the Trial Court pending the completion of arbitration. The trial court denied those motions. Appellants file this interlocutory appeal pursuant to Sections 51.016 and/or 171.098 of the Texas Civil Practice and Remedies Code.

**II. STATEMENT REGARDING ORAL ARGUMENT**

The issues in this appeal are straightforward, and the facts are not complicated. Shepherd does not think oral argument is necessary, but will participate if one takes place.

## III. ISSUE PRESENTED.

Did the Trial Court commit reversible error when it denied the Motions to Compel Arbitration because a valid agreement to arbitrate Burges' claims against Shepherd and Girard existed?

## IV. STATEMENT OF FACTS.

### A. THE PARTIES AND BURGE'S CLAIMS.

Burge filed suit on September 21, 2016 in the 72nd District Court of Lubbock County [C.R. 6]. Burge alleges that he is the brother of Defendants Karolyn Shepherd and Judy Kay Stevenson (the "Sisters"). Burge further alleges that he and his Sisters were the beneficiaries of trusts set up by their parents. Burge sued his Sisters, Shepard, and Girard alleging that he had been cheated out of money and/or property that had been placed in trust for him by his parents. Burge alleged, *inter alia,* causes of action for fraud, unjust enrichment, conversion, breach of fiduciary duty, theft liability, and conspiracy against all Defendants. See, Plaintiff's Original Petition, C.R. 6 – 19.

Girard is a registered broker-dealer and Shepherd was a registered representative affiliated with Girard [C.R. 140]. There were two accounts at Girard that are relevant to this appeal, both of which were opened in November of 2011: (1) a Premiere Select IRA account, opened by Alice Burge ("Mother") (the "IRA Account"); and (2) a Joint Tenant with Rights of Survivorship Account,

opened by Burge, his Mother, and his Sisters ("Joint Tenant Account") [C.R. 140-141].

Burge alleged that he had beneficial interests in both accounts, and they were wrongfully closed and their assets were "moved" to other accounts in which he had no interest. In effect, he alleges that the Defendants stole money from him by emptying those accounts for the benefit of his Sisters [POP ¶¶3.08, 3.09, C.R. 8]. Burge also alleges theft of real property [POP ¶3.10, C.R. 9]. He alleges that all Defendants (including Shepherd and Girard) acted together as part of a ". . . plan to cut [Burge] out of his inheritance" [POP ¶3.13 C.R. 8].

## B. THE ARBITRATION AGREEMENT AND THE MOTIONS TO COMPEL ARBITRATION

Girard filed a Motion to Compel Arbitration on March 30, and relied on the account opening documents for the IRA Account. See, Girard's Motion at C.R. 126 – 130 and Exhibit A thereto at S.C.R. 4-24. Shepherd filed a Motion to Compel Arbitration on May 4 which relied on account opening documents for both the IRA Account and the Joint Account. See, Shepherd's Motion, his Affidavit in support, and Exhibits A and B thereto at C.R. 131 – 183.

Included in the account opening documents for the Joint Account attached to Shepherd's affidavit were documents entitled "Brokerage Access Form" [C.R. 172 - 176] and "Statement of Investment Selection" [C.R. 181 – 182]. Burge signed both of those documents. See, C.R. 176 and 182 (in Appendix). Printed in a

conspicuous box just above Burge's signature on both of those pages (the copy at C.R. 182 is more legible) was the following language (emphasis added):

> I represent that I have read the terms and conditions concerning this account and agree to be bound by such terms and conditions as currently in effect and as may be amended from time to time. I acknowledge receipt of the margin disclosure statement and the disclosure of credit terms on transactions, ***this account is governed by a pre-dispute arbitration clause, which is found on the last page of the customer agreement. I acknowledge receipt of the pre-dispute arbitration clause***.

Shepherd signed both documents just below Burge. See, CR 176, 182.

The Customer Agreement was included in the account opening documents for the IRA Account attached to Shepherd's Affidavit. See, C.R. 156 – 162. It was also included in Exhibit A to Girard' Motion [S.C.R. 18 - 24]. The pre-dispute arbitration agreement was included in that Customer Agreement and provides as follows:

> "By signing an arbitration agreement, the parties agree as follows:
>
> > (A) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
>
> * * *

> All controversies that may arise between me, You[1] and NFS concerning any subject matter, issue or circumstance whatsoever including, but not limited to, controversies concerning any account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between me, You and NFS whether entered into or arising before, on or after the date this account is opened) shall be determined by arbitration in accordance with the rules then prevailing of the Financial Industry Regulatory Authority (FINRA) or any United States securities self-regulatory organization or United States securities exchange of which the person, entity or entities against whom the claim is made Is a member, as I may designate." [C.R. 161]

Thus, this arbitration clause was referenced in the account opening documents for both accounts, and was in the record in two places in connection with the Motions to Compel Arbitration – in Exhibit A to Girard's Motion, and in Exhibit B to Shepherd's Affidavit filed with his Motion. Burge's signature was on two separate documents right under an acknowledgement that he had received the arbitration clause and was subject to it [C.R. 176 and 182]. Shepherd signed the same pages, thus creating a binding agreement to arbitrate.

All of these documents had been on file for almost a month when Burge filed a Response to both Motions on May 30 [C.R. 185 – 204]. In support of his Response, Burge filed his own Affidavit [C.R. 206 – 207]. Notably -- ***<u>Burge did not deny executing the Joint Account documents and did not deny agreeing to</u>***

[1] "You" is defined as the broker – dealer. See C.R. 156.

***the arbitration clause in the documents that were referenced directly above his signature on the "Brokerage Access Form" and "Statement of Investment Selection" documents.***

## V. SUMMARY OF THE ARGUMENT.

The terms of the arbitration agreement and the evidence that Burge had agreed to it were not controverted. Since Burge's claims indisputably involve a controversy with Shepherd and Girard relating to the IRA Account and/or the Joint Account, those claims fall within the scope of the arbitration agreement. Appellants timely moved to compel arbitration in this proceeding and, based on the applicable facts and law, the trial court committed reversible error by denying Appellants' motions to compel arbitration and otherwise stay the proceedings in the Trial Court pending arbitration.

## VI. ARGUMENT AND AUTHORITIES.

### A. JURISDICTION, ARBITRABILITY STANDARDS AND STANDARD OF REVIEW.

#### 1. Jurisdiction for Interlocutory Appeal.

A person may take an interlocutory appeal to the Court of Appeals from an order of a District Court denying a motion to compel arbitration whether the motion relies on the Federal Arbitration Act (9 U.S.C. §1, *et seq.)* or the Texas Arbitration Act (chapter 171 of the Business & Commerce Code). See, TEX. CIV. PRAC. & REM. CODE §51.016, 171.098; 9 U.S.C. §16(a)(1)(A)-(C). See also, *In re*

*Merrill Lynch & Co.,* 315 S.W.3d 888, 891, n. 3 (Tex. 2010). Shepherd moved to compel arbitration under both the federal and state statutes [C.R. 133, 137] as did Girard [C.R. 126].

**2. Arbitration Standards.**

In determining whether to compel arbitration, the court must decide: (1) whether a valid, enforceable arbitration agreement exists, and (2) if so, whether the claims asserted fall within the scope of that agreement. *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 781 (Tex. 2006); *Chambers v. O'Quinn*, 305 S.W.3d 141, 146 (Tex.App.—Houston, [1st Dist] 2009, pet. denied). The first question is a question of fact. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992). The party seeking to compel arbitration has the initial burden to establish his right to the remedy under the first prong; that is, to establish that a valid arbitration agreement exists.

Once a party seeking to compel arbitration establishes an agreement to arbitrate, the court must then determine whether the arbitration agreement covers the nonmovant's claims. Like other questions of contract construction, that is a question of law. *In re FirstMerit Bank*, 52 S.W.3d 749, 753-54 (Tex. 2001).

When a movant establishes the existence of an agreement, and that the agreement applies to the dispute, the trial court has no discretion but to compel arbitration and stay its own proceedings. *In re FirstMerit Bank,* at 754;

TEX.CIV.PRAC. & REM CODE §171.025 ("The court shall stay a proceeding that involves an issue subject to arbitration . . . .") A trial court "shall order the parties to arbitrate" upon a showing of an agreement to arbitrate. Tex.Civ.Prac. & Rem. Code §171.021(a). Section 3 of the FAA (9 U.S.C. §3) similarly provides (emphasis added):

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . ***shall*** on application of one of the parties ***stay the trial of the action*** until such arbitration has been had in accordance with the terms of the agreement . . . .

**3. Standard of Review.**

Appeals of orders denying arbitration under the both the federal and state statutes are subject to a no-evidence standard for the trial court's factual determinations, and a *de novo* standard for legal determinations. This standard is the same as the abuse of discretion standard of review that is applied to interlocutory appeals under the FAA. *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 862-63 (Tex. App.—Dallas 2010, no pet.).

**B. THE TRIAL COURT ERRED IN FAILING TO COMPEL ARBITRATION OF BURGE'S CLAIMS AGAINST GIRARD AND SHEPHERD BECAUSE A VALID AGREEMENT TO ARBITRATE SUCH CLAIMS EXISTED BETWEEN BURGE AND GIRARD AND SHEPHERD.**

As noted previously, the first step in determining whether parties should be compelled to arbitrate a dispute is to consider whether the parties agreed to

arbitrate. Texas law controls the resolution of that issue under both the federal and state statutes. "When Texas courts are called on to decide if disputed claims fall within the scope of an arbitration clause under the Federal Act, Texas procedure controls that determination." *Anglin,* 842 S.W.2d at 268. The existence of an arbitration agreement is a question of fact, which is to be resolved "summarily". Tex.Civ.Prac. & Rem. Code §171.023(b). Such a summary resolution should be made on the basis of affidavits whenever possible. If the movant meets his burden with affidavits, then the burden shifts to the opponent to controvert it by affidavits. *Anglin,* 842 S.W.2d at 268.

Issues of fact that are controverted in the affidavits may then need to be resolved by an evidentiary hearing. As the Supreme Court wrote in *Anglin Co.,* 842 S.W.2d at 269: "[T]he trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. However, if the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts."

Here, Burge did not controvert any of the evidence submitted by Shepherd or Girard that he had agreed to the arbitration provision in the Customer Agreement. Burge did not even object to any of that evidence. There was <u>no</u> disputed issue of fact for the Trial Court to resolve – the only evidence in front of

the Trial Court was that that an agreement to arbitrate existed between Burge on the one hand and Girard / Shepherd on the other.

The only other issue in front of the trial court was– Does that agreement cover the claims against Shepherd and Girard?  As demonstrated below, the answer is clearly "yes".

**C.      Texas Rules of Contract Construction are Applicable to the Determination of Whether A Valid Agreement to Arbitrate Existed.**

Construction of the scope of arbitration agreement is a question of law.  *In re FirstMerit Bank*, 52 S.W.3d 749, 754 (Tex. 2001).  Texas Courts generally apply state-law principles governing the formation of contracts to claims under the FAA as well as the Texas Arbitration Act.  *In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 678 (Tex.2006).  In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex. 1980).  To achieve this objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Valence Operating Co. v. Dorsett,* 164 S.W.3d at 661; *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d at 518.

A strong presumption favoring arbitration arises after the party seeking to compel arbitration proves that a valid arbitration agreement exists. Texas Courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *In re FirstMerit Bank*, N.A., 52 S.W.3d 749, 753 (Tex. 2001). Finally, to determine whether an arbitration agreement covers a party's claims, a court must focus on the Petition's factual allegations, not the legal causes of action asserted. *Id*., at 754.

One general principle of contract construction is that the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex. 1968) (citing the Restatement of the Law of Contracts § 230 (1932) with approval). As said in the Restatement, § 230, supra, "[the] standard of interpretation … is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration." *Id.* Where a question relating to the construction of a contract is presented, as here, the Courts are to take the *wording* of the instrument, *consider the same in the light of the surrounding circumstances,* and apply the pertinent rules of construction thereto in order to settle the meaning of the contract. *Spence & Howe Construction Co. v. Gulf Oil Corp*., 365 S.W.2d 631 (Tex. Sup.1963).

Finally, no single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Myers v. Gulf Coast Minerals Mgmt. Corp.,* 361 S.W.2d 193, 196 (Tex.1962); *Citizens Nat'l Bank v. Tex. & P. Ry. Co.,* 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941).

### D. Burge's Claims Fall Within the Scope of the Account Documents' Arbitration Provisions.

Once Appellants established the existence of a valid arbitration agreement, the burden shifted to Burge to defeat enforcement of that agreement. *In re J.D. Edwards World Solutions, Co.,* 87 S.W.3d 546, 549 (Tex.2002) (per curiam). The Texas Supreme Court has held that the burden is on the party resisting arbitration "to show that their claims fell outside the scope of the arbitration agreement." *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995). "A court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (quoting *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995)) (emphasis in original) (internal citations omitted).

Indeed, arbitration agreements even cover disputes involving parties who did not sign the agreement when their rights arise from or directly relate to the agreement. *See In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 762 (Tex. 2006); *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302 (Tex. 2006); *see, e.g., In re BNP*

*Paribas*, 13-07-353-CV, 2008 WL 2208933, at *3-4 (Tex. App.—Corpus Christi May 29, 2008, no pet.).

Actions against individual employees for conduct which in substance arises in the course of employment are subject to arbitration agreements with their employers. *See, e.g., In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 190 (Tex. 2007) ("Because the plaintiffs' claims against Medina are in substance claims against Merrill Lynch, they must abide by their agreement to arbitrate those claims.").

Burge's claims against Shepherd arise out of and/or relate to the IRA Account and the Joint Account and otherwise satisfy the various criteria of an arbitrable claim. Generally, if the facts alleged "touch matters," "have a significant relationship" to, or are "factually intertwined" with the contract that is subject to the arbitration agreement, the claim is arbitrable. *In re Mission Petroleum Carriers, Inc.*, 13-04-00550-CV, 2005 WL 326848, at *2 (Tex. App.—Corpus Christi Feb. 11, 2005, no pet.) (Federal Act) (quoting *Pennzoil Company v. Arnold Oil Company, Inc.*, 30 S.W.3d 494, 498 (Tex.App.—San Antonio 2000, orig. proceeding); *Emerald Texas, Inc. v. Peel*, 920 S.W.2d 398, 404(Tex.App. – Houston [1st Dist. 1996, no pet.) (Texas Act), citing *Valero Energy Corp. v. Wagner & Brown*, 777 S.W.2d 564, 566 (Tex. App. – El Paso 1989, writ denied).

The Court must focus on the factual allegations of the Plaintiff's Petition, rather than the legal causes of action asserted. *In re FirstMerit Bank*, 52 S.W.3d 749, 754 (Tex. 2001). The Court should consider whether the facts alleged are intertwined with the contract containing the arbitration clause. *Jack B. Anglin Co.,* 842 S.W.2d at 271. To fall within the scope of an arbitration provision, the allegations need only be factually intertwined with arbitrable claims *or otherwise touch upon the subject matter of the agreement containing the arbitration provision*. *In re Prudential Sec., Inc.*, 159 S.W.3d 279, 283 (Tex.App.—Houston [14th Dist.] 2005, orig. proceeding) (emphasis added).

Under the broad language of the arbitration provision contained in the account opening documents – encompassing any controversy or dispute between the parties concerning the IRA Account or the Joint Account -- it simply cannot be said with positive assurance that the arbitration provision in the Customer Agreement does not cover Burge's claims against Shepherd and Girard. *See, e.g., Wee Tots Pediatrics, P.A. v. Morohunfola*, 268 S.W.3d 784 (Tex. App.—Fort Worth 2008, no pet.) (construing broad arbitration provision in employment agreement covering any disputes between the parties in any manner relating to the agreement to require arbitration in absence of exclusionary language). Clearly, Burge's claims, which include allegations of a scheme on the part of all Defendants to deprive Burge of his inheritance by, among other things, emptying

the IRA Account and Joint Account, are within the scope of the arbitration provision.

Further, it is clear that the arbitration provision is not limited to, nor was intended to be limited to, claims for breach of the account agreements. *See Capital Income Properties-LXXX v. Blackmon*, 843 S.W.2d 22 (Tex. 1992) (per curiam) (holding that arbitration provision governing claims that "arise out of and relate to" a limited partnership agreement compelled arbitration of claims of breach of fiduciary duty and fraudulent inducement to invest in partnership). Thus, each of Burge's claims, which relate to a ". . . plan to cut [Burge] out of his inheritance" [POP ¶3.13 C.R. 8] must be arbitrated.

Burge failed to offer any evidence to contradict any of Appellants' evidence. He failed to offer an interpretation of the arbitration agreement that plausibly denied the arbitrability of this dispute. Burge's only evidence addressed his Mother's mental state which is not relevant. See, C.R. 206 – 207. He failed to address, let alone carry, his burden of proof.

## CONCLUSION AND PRAYER

Shepherd and Girard entered into a valid and binding agreement to arbitrate all controversies or disputes concerning any transaction in the IRA Account or the Joint Account. Burge's claims concern those accounts. The Trial Court's order should be reversed, Burge should be ordered to arbitrate his claims against

Shepherd and Girard, and Cause No. 2016-522,595, pending in the 72nd District Court of Lubbock County should be stayed pending resolution of that arbitration.

Respectfully submitted,

KESSLER & COLLINS,
A Professional Corporation

By: /s/ Daniel P. Callahan
GARY S. KESSLER
State Bar No. 11358200
gsk@kesslercollins.com
DANIEL P. CALLAHAN
State Bar No. 03648700
dpc@kesslercollins.com
PHILIP G. McNICHOLAS
State Bar No. 24078987
pgm@kesslercollins.com

2100 Ross Avenue, Suite 750
Dallas, Texas 75201
(214) 379-0722 Telephone
(214) 373-4714 Facsimile
**COUNSEL FOR APPELLANT**
**JON MARK SHEPHERD**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via electronic service through Texas.gov or by email to all counsel of record on this 1st day of September, 2017 in accordance with the Texas Rules of Appellate Procedure.

/s/ Daniel P. Callahan
DANIEL P. CALLAHAN

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 3,487 words, excluding the words not included in the word count pursuant to Texas Rule of Appellate Procedure 9.4(i)(1). This is a computer generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare this document.

/s/ Daniel P. Callahan
DANIEL P. CALLAHAN

# APPENDIX

1. July 18, 20172 Order Denying Motion to Compel Arbitration…………Tab 1

2. Contract Provisions Central to Appeal………………………………… Tab 2



# TAB 1

Filed 7/18/2017 11:40 AM
Barbara Sucsy
District Clerk
Lubbock County, Texas

TB

CAUSE NO. 2016-522595

| | | |
|---|---|---|
| BOBBY BURGE, INDIVIDUALLY AND AS BENEFICIARY OF THE BURGE FAMILY REVOCABLE TRUST<br>Plaintiff, | § | IN THE 72ND DISTRICT COURT |
| v. | § | OF |
| KAROLYN SHEPHERD, INDIVIDUALLY AND AS CO-SUCCESSOR TRUSTEE OF THE BURGE FAMILY REVOCABLE TRUST, JUDY KAY STEVENSON, INDIVIDUALLY AND AS BENEFICIARY OF THE BURGE FAMILY REVOCABLE TRUST, JON MARK SHEPHERD, INDIVIDUALLY AND GIRARD SECURITIES, INC.,<br>Defendants. | § | LUBBOCK COUNTY, TEXAS |

**ORDER DENYING DEFENDANTS, GIRARD SECURITIES, INC. AND JON MARK SHEPHERD'S MOTIONS TO COMPEL ARBITRATION AND PLEAS IN ABATEMENT**

Came on to be heard Defendants, **GIRARD SECURITIES, INC. AND JON MARK SHEPHERD'S** Motions to Compel Arbitration and Pleas in Abatement in the above referenced matter. In response, Plaintiff filed his Response to Motions to Compel Arbitration and Pleas in Abatement. The Court, after consideration and review of the motions, responses, evidence and argument of counsel, and Movants failure to provide legible copies of Defendant's exhibits as requested by the Court, finds that the Defendants' Motions to Compel Arbitration and Pleas in Abatement should be **DENIED**.

**It Is Therefore Ordered, Adjudged and Decreed** that Defendants, Girard Securities, Inc. and Jon Mark Shepherd's Motions to Compel Arbitration and Pleas in Abatement are in all things **Denied.**

**SO ORDERED.**

**Signed, this the 18 day of July, 2017.**

______________________
**Judge Presiding**



# TAB 2

ACCOUNT NUMBER

[illegible]

I ACKNOWLEDGE THAT I HAVE READ, UNDERSTOOD, AND AGREE TO THE TERMS SET FORTH IN THE BROKERAGE ACCESS CUSTOMER AGREEMENT AND REQUEST THAT YOU ACCEPT ONE OR MORE ACCOUNTS IN MY NAME. [illegible]

[illegible]

I UNDERSTAND THAT IF I ELECT TO CHANGE MY CORE ACCOUNT INVESTMENT VEHICLE, MY EXISTING CORE ACCOUNT INVESTMENT VEHICLE WILL BE LIQUIDATED OR WITHDRAWN, AS APPLICABLE, AND THE NEWLY SELECTED CORE ACCOUNT INVESTMENT VEHICLE WILL BE PURCHASED AND/OR FUNDED, AS APPLICABLE.

[illegible]

If I am a U.S. citizen, U.S. resident alien or other U.S. person, I certify under penalties of perjury that (1) the Social Security Number or Taxpayer Identification Number that I provided on this application is correct (or I am waiting for a number to be issued to me) and (2) I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding for failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding and (3) I am a U.S. citizen or other U.S. person, including a U.S. resident alien.

☐ If you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return, check this box to indicate that you do not certify item 2 above.

If I am not a U.S. citizen, U.S. resident alien or other U.S. person, I am submitting the applicable Form W-8 with this form to certify my foreign status and, if applicable, claim tax treaty benefits.

| I represent that I have read the terms and conditions concerning this account and agree to be bound by such terms and conditions as currently in effect and as may be amended from time to time. I acknowledge receipt of the margin [illegible] and the disclosure of credit terms on transactions. This account is governed by [illegible] arbitration clause, which is found on the last page of the customer agreement. I [illegible] of the pre-dispute arbitration clause. | The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. |
|---|---|

Signature and [illegible] required.

SIGNATURE [illegible] account holders (owners and authorized individuals) must sign and date in accordance with the signature requirements outlined in the [illegible] documents.

X [signature] 11-1-2011
1. SIGNATURE — DATE mm/dd/yyyy

X [signature]
4. SIGNATURE — DATE mm/dd/yyyy

X [signature] 11-3-2011
2. SIGNATURE — DATE mm/dd/yyyy

X
5. SIGNATURE — DATE mm/dd/yyyy

X [signature]
3. SIGNATURE — DATE mm/dd/yyyy

X
6. SIGNATURE — DATE mm/dd/yyyy

**For Branch Use Only**

DLS Mark Shepherd [signature] 11/7/2011
REGISTERED REP. NO./NAME — SIGNATURE — DATE mm/dd/yyyy

8100 Stefany Schade [signature] 11/7/11
OFFICE/MANAGER/PRINCIPAL NAME — SIGNATURE — DATE mm/dd/yyyy

K6B103721

ACCOUNT NUMBER

[illegible]

To: My Broker/Dealer and National Financial Services LLC ("NFS," together with my Broker/Dealer, "You")

I ACKNOWLEDGE THAT I HAVE READ, UNDERSTOOD, AND AGREE TO THE TERMS SET FORTH IN THE BROKERAGE ACCESS CUSTOMER AGREEMENT AND REQUEST THAT YOU ACCEPT ONE OR MORE ACCOUNTS IN MY NAME. I am at least 18 years of age and of full legal age in the state in which I reside, and I am authorized to enter into this agreement. I understand that, upon issuer's request in accordance with applicable rules and regulations, you will supply my name to issuers of any securities held in my account so I might receive any important information regarding them, unless I notify you in writing not to do so (you may not be able to object to this disclosure for certain securities issued by investment companies that are registered under the Investment Company Act of 1940 or as required by applicable law). I understand that telephone calls to you may be recorded, and I consent to such recording.

If I have not checked the box for Affiliations, I represent and warrant that I am not affiliated with or employed by a stock exchange or a broker/dealer or I am not a control person or affiliate of a public company under SEC Rule 144 (such as a director, 10% shareholder, or a policy-making officer), or an immediate family or household member of such a person.

I have indicated on the signature card the account holder(s) to whom checks and/or debit cards should be issued (names will appear as they appear on the account registration). Checks and/or debit cards will be mailed to the account holder's legal address.

I hereby select the core account investment vehicle option listed in Section 6 as my Core Account. I understand that it is my responsibility to read the prospectus, or disclosure document, as applicable, for any mutual fund which I purchase or exchange or Bank Deposit Sweep Program into which I have funds transferred or invest. I have received and read the applicable prospectus or disclosure document for the mutual fund or Bank Deposit Sweep Program into which I am investing or to which I am transferring funds–including, but not limited to any mutual fund or Bank Deposit Sweep Program that I choose for my Core Account–and I agree to the terms of the prospectus or disclosure document, as applicable, and the Customer Agreement.

If I choose a Bank Deposit Sweep Program for my core account investment vehicle, I represent that I am: (1) a natural person or (2) if I am a fiduciary, including trustee, custodian, agent, administrator or executor, each of the beneficial owners of the account is a natural person or (3) if this account is being established as a TOD account, any such beneficiary is a natural person.

If I do not choose a core account investment vehicle for my account, I authorize my Broker/Dealer to, at its sole discretion, select a default core account investment vehicle for me and I shall hold my Broker/Dealer and NFS harmless for such default selection and any consequences resulting therefrom. I understand that different core account investment vehicles may have different rates of return and different terms and conditions, such as FDIC insurance or SIPC protection, and that my Broker/Dealer may not consider these differences when making a core account investment vehicle selection for me.

I UNDERSTAND THAT IF I ELECT TO CHANGE MY CORE ACCOUNT INVESTMENT VEHICLE, MY EXISTING CORE ACCOUNT INVESTMENT VEHICLE WILL BE LIQUIDATED OR WITHDRAWN, AS APPLICABLE, AND THE NEWLY SELECTED CORE ACCOUNT INVESTMENT VEHICLE WILL BE PURCHASED AND/OR FUNDED, AS APPLICABLE.

The following clause referring to lending of securities applies only to those accounts eligible and approved for margin.

YOU ARE HEREBY AUTHORIZED TO LEND, HYPOTHECATE OR REHYPOTHECATE SEPARATELY, OR WITH THE PROPERTY OF OTHERS, EITHER TO YOURSELVES OR TO OTHERS, ANY PROPERTY YOU MAY BE CARRYING FOR ME ON MARGIN. NFS MAY USE CERTAIN SECURITIES IN MY ACCOUNT IN CONNECTION WITH SHORT SALES AND MAY RECEIVE COMPENSATION IN CONNECTION THEREWITH. THIS AUTHORIZATION SHALL APPLY TO ALL MY BROKERAGE ACCOUNTS YOU CARRY AND SHALL REMAIN IN FULL FORCE UNTIL YOU RECEIVE FROM MY BROKER/DEALER WRITTEN NOTICE OF MY REVOCATION AT YOUR PRINCIPAL OFFICES.

**If I am a U.S. citizen, U.S. resident alien or other U.S. person, I certify under penalties of perjury that: (1) the Social Security Number or Taxpayer Identification Number that I provided on this application is correct (or I am waiting for a number to be issued to me); and (2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding for failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and (3) I am a U.S. citizen or other U.S. person, including a U.S. resident alien.**

☐ **If you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return, check this box to indicate that you do not certify item 2 above.**

**If I am not a U.S. citizen, U.S. resident alien or other U.S. person, I am submitting the applicable Form W-8 with this form to certify my foreign status and, if applicable, claim tax treaty benefits.**

| | |
|---|---|
| I represent that I have read the terms and conditions concerning this account and agree to be bound by such terms and conditions as currently in effect and as may be amended from time to time. I acknowledge receipt of the margin disclosure statement and the disclosure of credit terms on transactions. This account is governed by a pre-dispute arbitration clause, which is found on the last page of the customer agreement. I acknowledge receipt of the pre-dispute arbitration clause. | **The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.** |

**Signature and Date are required.**

▶ **SIGNATURES.** All account holders (owners and authorized individuals) must sign and date in accordance with the signature requirements outlined in the account's supporting documents.

X Alice Mae Burge 11-1-2011
1. SIGNATURE DATE mm/dd/yyyy

X [signature]
4. SIGNATURE DATE mm/dd/yyyy

X [signature] 11-3-2011
2. SIGNATURE DATE mm/dd/yyyy

X
3. SIGNATURE DATE mm/dd/yyyy

X [signature]
5. SIGNATURE DATE mm/dd/yyyy

X
6. SIGNATURE DATE mm/dd/yyyy

For Branch Use Only

Mark Shepherd
REGISTERED REP NO./NAME — SIGNATURE [signature] — DATE mm/dd/yyyy 11/2/2011

8100 Stefany Schade
OFFICE MANAGER/PRINCIPAL NAME — SIGNATURE — DATE mm/dd/yyyy

**NOTICE TO CUSTOMER**

**38. Payment for Order Flow**

If You transmit orders (including those generated by reinvested dividends) through NFS, NFS in turn will send my orders to various exchanges or market centers based on a number of factors. Such factors include size of order, trading characteristics of the security, favorable execution prices (including the opportunity for price improvement), access to reliable market data, speed of execution, liquidity enhancement opportunities, availability of efficient automated transaction processing, and reduced execution costs through price concessions from the market centers. Certain of the market centers may execute orders at prices superior to the publicly quoted market in accordance with their rules or practices. While a customer may specify that an order be directed to a particular market center for execution, the order-routing policies, taking into consideration all of the factors listed above, are designed to result in favorable transaction processing for customers. You will furnish payment for order flow and routing policies to me on an annual basis.

You and NFS receive remuneration, compensation, or other consideration for directing customer orders for equity securities to particular Broker/Dealers or market centers for execution. Such consideration, if any, takes the form of financial credits, monetary payments, or reciprocal business.

Note: Trades placed through telephone, electronic or on-line trading systems cannot specify a particular market center for execution.

**39. Investment Objective Descriptions**

The typical investments listed with each objective are only some examples of the kinds of investments that have historically been consistent with the listed objectives. However, neither You nor NFS can assure that any investment will achieve my intended objective. I acknowledge that I must make my own investment decisions and determine for myself if the investments I select are appropriate and consistent with my investment objectives.

I acknowledge and agree that neither You nor NFS assume any responsibility to me for determining if the investments I selected are suitable for me.

**Preservation of Capital.** An investment objective of Preservation of Capital indicates that I seek to maintain the principal value of my investments and I am interested in investments that have historically demonstrated a very low degree of risk of loss of principal value. Some examples of typical investments might include money market funds and high-quality, short-term fixed-income products.

**Income.** An investment objective of Income indicates that I seek to generate income from investments and I am interested in investments that have historically demonstrated a low degree of risk of loss of principal value. Some examples of typical investments might include high quality, short- and medium-term fixed-income products, short-term bond funds, and covered call options.

**Capital Appreciation.** An investment objective of Capital Appreciation indicates that I seek to grow the principal value of my investments over time and I am willing to invest in securities that have historically demonstrated a moderate to above-average degree of risk of loss of principal value to pursue this objective. Some examples of typical investments might include common stocks, lower-quality, medium-term fixed income products, equity mutual funds, and index funds.

**Trading Profits.** An investment objective of Trading Profits indicates that I seek to take advantage of short-term trading opportunities, which may involve establishing and liquidating positions quickly. Some examples of typical investments might include short-term purchases and sales of volatile or low-priced common stocks, put or call options, spreads, straddles and/or combinations on equities or indexes.* This is a high-risk strategy.

**Speculation.** An investment objective of Speculation indicates that I seek a significant increase in the principal value of my investments and I am willing to accept a corresponding greater degree of risk by investing in securities that have historically demonstrated a high degree of risk of loss of principal value to pursue this objective. Some examples of typical investments might include lower-quality, long-term fixed-income products, initial public offerings, volatile or low-priced common stocks, the purchase or sale of put or call options, spreads, straddles and/or combinations on equities or indexes,* and the use of short-term or day trading strategies.

*Retirement accounts may not be approved for margin trading privileges. Margin is required to sell covered puts and uncovered puts and call options, conduct spreads, and to write straddles and combinations on equities or indexes.

**40. FINRA Rule 4311**

FINRA Rule 4311 requires that You and NFS identify the various functions that You and NFS each agree to perform regarding the administration of my brokerage account. The following is a summary of the allocation services performed by You and NFS. A more complete description is available upon request.

As my Broker/Dealer, You are responsible for (1) obtaining and verifying account information and documentation, (2) opening, approving, and monitoring my brokerage account, (3) transmitting timely and accurate instructions to NFS with respect to my brokerage account, (4) determining the suitability of investment recommendations and advice, (5) operating and supervising my account and its own activities in compliance with applicable laws and regulations, including compliance with margin rules pertaining to my margin account (if applicable), and (6) maintaining the required books and records for the services it performs.

NFS shall perform the following tasks at Your direction: (1) execute, clear and settle transactions processed through NFS by You, (2) prepare and send transaction confirmations and periodic statements of my retirement account (unless You have undertaken to do so). Certain pricing and other information may be provided by You or obtained from third parties, which has not been verified by NFS, (3) act as custodian for funds and securities received by NFS on my behalf, (4) follow Your instructions with respect to transactions and the receipt and delivery of funds and securities for my account, and (5) extend margin credit for purchasing or carrying securities on margin, if applicable. You are responsible for ensuring that my account is in compliance with federal, industry, and NFS margin rules and for advising me of margin requirements. NFS shall maintain the required books and records for the services it performs.

**41. Pre-Dispute Arbitration Agreement**

**This agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement, the parties agree as follows:**

(A) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

(B) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

(C) The ability of the parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings.

(D) The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.

(E) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

(F) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

(G) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

**All controversies that may arise between me, You and NFS concerning any subject matter, issue or circumstance whatsoever (including, but not limited to, controversies concerning any account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between me, You and NFS whether entered into or arising before, on or after**